# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOHN BEMAN MCFALL,

        Defendant-Appellant.

FOR PUBLICATION
March 5, 2015
9:00 a.m.

No. 318830
Emmet Circuit Court
LC No. 13-003839-FH

Before: SAAD, P.J., and OWENS and K. F. KELLY, JJ.

SAAD, P.J.

Defendant appeals his jury conviction of failing to register as a sex-offender, pursuant to MCL 28.729(2). For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant is a convicted sex offender, and was sentenced to a lengthy prison term for his crimes.[1] In January 2013, in anticipation of defendant's release from prison, a notary public met with defendant to notarize his receipt and signature of a notice explaining his obligations under the Sex Offenders Registration Act ("SORA"), MCL 28.721 *et seq*. The document stated that MCL 28.725a(3)(c) required defendant, as a "tier III offender," to verify his address four times per year within four separate intervals: the first 15 days of January, April, July, and October.[2] Defendant read the form, signed it, and initialed its different provisions, save for a section instructing him to pay a $50 fee for registration, which he specifically rejected. According to the notary who notarized defendant's reading and signing of the form, defendant stated that he

---

[1] Defendant assaulted an individual with intent to commit first-degree criminal sexual conduct (penetration), under MCL 750.520g(1), and fourth-degree sexual penetration, under MCL 750.520e.

[2] The Legislature subsequently amended MCL 28.725a(3)(c)'s precise date scheduling in 2013 PA 149, which came into effect April 1, 2014. During the time period relevant to this case, MCL 28.725a(3)(c) read: "A tier III offender shall report not earlier than the first day or later than the fifteenth day of each April, July, October, and January after the initial verification or registration."

-1-

understood the form, and refused to pay the $50 registration fee.[3]  Defendant received a copy of the form after he signed it.

After his release from prison on February 18, 2013, defendant registered as a sex offender at the Emmet County Sherriff's Office, as required by MCL 28.725a(3)(c).  However, defendant did not visit the Sheriff's Office to verify his address between April 1 and April 15.  On April 16, the Michigan State Police alerted local law enforcement that defendant did not comply with his obligations under the SORA.  The prosecution charged him with violation of MCL 28.729(2)[4] in the Emmet Circuit Court, which empanelled a jury to hear the case.

Because defendant is indigent, the state appointed an attorney to represent him, who, by chance, had prosecuted defendant for his earlier sex offenses.  Nonetheless, defendant—who was aware that the attorney had prosecuted him—did not object to the appointment, and even stated that the attorney is a "good lawyer."

Soon after the completion of jury selection, defendant's counsel, outside of the presence of the jury, informed the trial court that defendant wanted substitute counsel.  The attorney explained that, the night before and the morning of trial, defendant told him that he should not have waived the preliminary examination, and complained of a supposed lack of communication between counsel and defendant.  Defendant then spoke with the trial court, and claimed that his attorney had discussed his defense strategy with the prosecutor and the court—namely, whether defendant could claim that he did not "willfully" violate MCL 28.729(2).  The court explained to defendant that both his attorney and the prosecutor had submitted their proposed jury instructions, and that the court would not include an instruction on willfulness as an element of the SORA violation.  It also told defendant that his lawyer had not discussed any other trial strategy with the trial court or the prosecutor.

After defendant stated that he had told his attorney the night before trial that he no longer wanted the attorney to represent him, the trial court denied his request for substitute counsel. The trial court stated that defendant's effort was "an improper tactical maneuver . . . on the morning of trial to impede progress of this matter," and further stressed that: (1) defendant was aware of his attorney's prior prosecution of him from the beginning of the representation, and yet did not object to the appointment; and (2) defense counsel was a skilled attorney who regularly appeared before the court, and that defendant had acknowledged his lawyer's capability. Defendant's case then proceeded to trial.

Defendant, who testified on his own behalf, argued that he did not "willfully" violate the SORA—he believed he only had to verify his residency every 90 days—and that he could not be convicted under MCL 28.729(2) as a result.  The trial court, holding that MCL 28.729(2) was a

---

[3] Defendant contested the notary's recollection of events at trial, testifying that he merely "glanced" at the form, before signing and initialing it.

[4] Precisely, defendant did not fulfill his obligation to report the information required under MCL 28.725a(3)(c), which, in turn, caused him to violate MCL 28.729(2).

strict liability offense, did not include an instruction on "willfulness" in the jury instructions, and the jury convicted defendant of failing to register as a sex offender under the statute.

On appeal, defendant argues that the trial court abused its discretion when it: (1) denied his request for substitute counsel; and (2) refused to instruct the jury on the element of "willfulness" supposedly contained in MCL 28.729(2).

## II. STANDARD OF REVIEW

We review a trial court's decision denying substitution of counsel for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). A trial court abuses its discretion when it issues a decision that falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

"[J]ury instructions that involve questions of law are . . . reviewed de novo." *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005), overruled in part on other grounds by *People v Derror*, 475 Mich 316, 334; 715 NW2d 822 (2006). A trial court's determination of whether a jury instruction applies to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Again, a trial court abuses its discretion when a decision falls outside the range of principled outcomes. *Feezel*, 486 Mich at 192.

## III. ANALYSIS

### A. SUBSTITUTION OF COUNSEL

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced." *Traylor*, 245 Mich at 462 (citations omitted). Substitution of counsel "is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. Good cause may exist where "a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic,"[5] where there is a "destruction of communication and a breakdown in the attorney-client relationship,"[6] or where counsel shows a lack of diligence or interest. *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011).

Here, defendant argues that he should have received substitute counsel because his attorney: (1) prosecuted him for sex offenses in 1995 (and obtained the conviction that led to his imprisonment); (2) allegedly waived the preliminary examination over his objection; (3)

---

[5] *People v Williams*, 386 Mich 565, 574; 194 NW2d 337 (1972).

[6] *People v Bass*, 88 Mich App 793, 802; 279 NW2d 551 (1979).

supposedly did not communicate with him and provide him materials related to his trial; and (4) disagreed with him on what defense to pursue.

None of these assertions have any merit. As noted, defendant knew that his attorney had prosecuted him from the beginning of the representation. And yet, he did not voice any concerns about the issue (or any other aspects of defense counsel's representation) until the night before trial, when he supposedly requested new counsel. If defendant was uncomfortable with his attorney's representation in light of their prior history, the opportunity for him to request substitute counsel was at the beginning of representation—not the night before trial. Defendant's protestation on this point is particularly unconvincing because of his satisfaction with defense counsel's services earlier in the representation—again, defendant went so far as to call his attorney "a good lawyer."

Moreover, there is nothing in the record to demonstrate that defense counsel "ignored" defendant's alleged desire to have a preliminary examination, nor is there any indication that defense counsel failed to answer defendant's calls, reply to his mail, or provide him with needed discovery materials. The record also belies defendant's contentions that defense counsel did not pursue the defense he wanted—his attorney asked the court to instruct the jury that a MCL 28.729(2) violation must be willful, and defendant testified on his own behalf that he did not "willfully" disregard the statute's mandates.

Defendant therefore failed to show good cause for the appointment of substitute counsel, and the trial court correctly denied his request for a new attorney.

## B. JURY INSTRUCTIONS

When a court interprets a statute, it first looks to its "plain language, which provides the most reliable evidence of intent." *People v McKinley*, 496 Mich 410, 415; 852 NW2d 770 (2014). "If the statutory language is unambiguous, no further judicial construction is required or permitted." *Id.*

MCL 28.725a(3)(c) requires "tier III" sex offenders to submit and verify certain information to the authorities on a specific date schedule. If a sex offender fails to comply with his obligations under MCL 28.725a(3)(c), MCL 28.729 mandates that he will face certain penalties. MCL 28.729 provides, in relevant part:

(1) *Except as provided in subsections (2), (3), and (4),* an individual required to be registered under this act who willfully violates this act is guilty of a felony punishable as follows:

\* \* \*

(2) An individual who fails to comply with [MCL 28.725a] other than payment of the fee required under [MCL 28.725a(6)], is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both. [Emphasis added.]

-4-

As such, the plain language of the statute indicates that MCL 28.729(2) is a strict liability offense[7] that does not require a "willful" mental state—or any other mental state—for violation (as opposed to other provisions of the statute not exempted by MCL 28.729(1), which specifically mention the word "willfully" multiple times).[8] "Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). "[C]ourts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Id.*

Here, defendant unconvincingly claims that the trial court erred when it refused to instruct the jury that his violation of MCL 28.729(2) needed to be "willful." As noted, MCL 28.729(2) imposes a strict liability penalty—it does not include the word "willful" or "willfully" and is instead silent as to mental state—in a statute that repeatedly specifies a mental state in its other subsections. Again: "when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *Peltola*, 489 Mich at 185.

Defendant did not fulfill his obligations under MCL 28.725a(3)(c), which required him to report to the sheriff's office between April 1, 2013 and April 15, 2013. He therefore violated MCL 28.729(2). The statute makes no mention of a requisite mental state, and defendant's assertions to the contrary have no merit whatsoever. Accordingly, the trial court correctly denied his request to include a "willful" mental state in the jury instructions.

Affirmed.


/s/ Henry William Saad
/s/ Donald S. Owens
/s/ Kirsten Frank Kelly

---

[7] We note that the Legislature is entitled to create strict-liability offenses if it wishes. *People v Nasir*, 255 Mich App 38, 40; 662 NW2d 29 (2003). Though the courts may impose a mens rea under certain circumstances if a statute is silent as to one, none of the factors that would allow us to do so are present in this case. See *Nasir*, 255 Mich App at 41–45.

[8] See *People v Lockett (On Rehearing)*, 253 Mich App 651, 654; 659 NW2d 681 (2002) for a discussion on the meaning of "willfully" as it applied to an earlier version of MCL 28.729(1)(a).