# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

TAURAE MONIQUE CANADY,

      Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 333570
Wayne Circuit Court
LC No. 16-000378-01-FC

Before: CAMERON, P.J., and SERVITTO and GLEICHER, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a), armed robbery, MCL 750.529, and fourth-degree arson, MCL 750.75(1)(a)(*i*), for her role in the murder of and robbery from Rafael Brown. Defendant contends that the trial court improperly denied her request for the appointment of substitute counsel and challenges the sufficiency of the evidence supporting her armed robbery conviction. We discern no errors and affirm.

## I. BACKGROUND

Defendant and her brother, Taurus Canady, lived in an apartment building where Brown worked as a maintenance man. The landlord had evicted the Canady family but they were squatting in their former apartment. Taurus and defendant hatched a plan to earn some quick money to find a new place to live. Taurus would lie in wait in an apartment occupied by Brown. When Brown entered, defendant would hold the door closed while Taurus bludgeoned him to death with a sledgehammer. On the evening of December 17, 2015, defendant and her brother executed this plan. Defendant then removed Brown's phone and wallet from his person. The pair wrapped Brown's body in tarps and dragged him to his work van. Defendant stole expensive clothing and shoes, a radio, and a container of change from the van. Defendant and Taurus drove the van to a vacant lot, doused it in gasoline, and set it on fire. The duo were caught because Taurus bragged about the murder on Facebook and in a video he shared with friends. Defendant gave a coat stolen from Brown to her teenaged stepsister who reported the crime.[1]

---

[1] Taurus pleaded guilty to second-degree murder before trial.

-1-

## II. SUBSTITUTION OF COUNSEL

Defendant contends that the trial court abused its discretion when it denied her request for substitute counsel. Two days before the start of trial, defendant sent a letter to the court, stating that she had attempted to "fire[] [her] lawyer many times" because she did not believe counsel was "tryna fight for [her] and he doesn't care about [her] life." However, the court did not receive the letter until the first day of trial and defense counsel did not raise the issue until that day. Defense counsel noted that the real dispute between he and his client was whether they should proceed to trial and "what the chances were at trial." Defendant stated that counsel had not represented her well and "every time he comes to visit me it's a down talk." The court denied defendant's belated request for new counsel because she cited no specific concern that rendered counsel's performance inadequate and trial was scheduled to begin.

We review for an abuse of discretion a trial court's decision on a motion for substitution of counsel. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001).

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Appointment of a substitute counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. [*People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991).]

"The circumstances that would justify good cause rest on the individual facts in each case." *People v Buie*, 298 Mich App 50, 67; 825 NW2d 361 (2012). As stated by this Court in *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015):

> Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient. [Quotation marks and citations omitted.]

Defendant did not establish good cause to replace her appointed counsel. She cited no specific concerns or particular disagreements between her and her attorney. Instead, she merely alleged that she lacked confidence in her counsel. Although defendant challenges the adequacy of the court's consideration, the court heard from counsel and defendant and stated the reasons for its decision on the record. There was nothing more for the court to do in this situation. Ultimately, the court found defendant negligent in waiting until the eve of trial to raise her concerns and that granting defendant's request would unnecessarily delay the trial. We discern no error in the court's decision. See *People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).

## III. SUFFICIENCY OF THE EVIDENCE

Defendant asserts that the prosecution presented insufficient evidence to support that she intended to commit a larceny before Brown was killed. "A challenge to the sufficiency of the evidence in a jury trial is reviewed de novo, viewing the evidence in the light most favorable to the prosecution, to determine whether the trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). We may not interfere with the jury's assessment of witness credibility. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). "All conflicts in the evidence must be resolved in favor of the prosecution, and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Id*. at 180-181 (citations omitted).

MCL 750.529 proscribes armed robbery in relevant part: "A person who engages in conduct proscribed under [MCL 750.530] and who in the course of engaging in that conduct, possesses a dangerous weapon . . . is guilty of a felony. . . ." MCL 750.530, in turn, provides:

(1) A person who, in the course of committing a larceny of any money or other property that may be the subject of larceny, uses force or violence against any person who is present, or who assaults or puts the person in fear, is guilty of a felony. . . .

(2) As used in this section, "in the course of committing a larceny" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the property.

To establish the underlying offense of larceny, the prosecution must show "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016).

The prosecution presented evidence that defendant and Taurus planned their attack. Both before and after the offense, defendant expressed that her family needed money to find a new place to live. Defendant and Taurus made statements blaming Brown for their situation. They also planned for Taurus to use a sledgehammer, "a dangerous weapon," to kill Brown so they could rob him. Immediately after the killing, defendant took valuables from Brown's person and from his van. This evidence was sufficient to establish that defendant aided and abetted in Taurus's use of a dangerous weapon "in an attempt to commit the larceny." Stated differently, defendant and Taurus intended to beat and kill Brown in order to commit a larceny.

Defendant contends that Brown was already dead when she stole his property and so could not be the victim of an armed robbery. However, armed robbery in Michigan involves more than a classic hold-up. A perpetrator may use the weapon at any time during the corpus of the crime, including before, during, or after the actual theft. See MCL 750.530(2). Here,

defendant and Taurus used a dangerous weapon to incapacitate (actually kill) their victim so they could more easily steal his valuables. This falls within the statutory definition of an armed robbery.

We affirm.

/s/ Thomas C. Cameron
/s/ Deborah A. Servitto
/s/ Elizabeth L. Gleicher