# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DIONTEE LAQUINN BEAVERS,

Defendant-Appellant.

UNPUBLISHED
January 18, 2018

No. 336001
Kent Circuit Court
LC No. 14-006054-FH

Before: METER, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant, Diontee Laquinn Beavers, appeals as of right the trial court's order revoking his probation for a bench trial conviction of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion). The trial court sentenced defendant as a fourth-habitual offender, MCL 769.12, to 1 year 6 months to 15 years' imprisonment for the probation violation. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

After defendant's CSC-IV conviction in Kent County, he moved to Saginaw, Michigan. His probation supervision was transferred to Saginaw County. Defendant was required to complete a sex offender treatment program as a result of his probation. However, the service provider would not allow defendant to participate in treatment because he refused to accept responsibility for the incident that led to his conviction and because he was actively appealing his conviction.[1] As a result, defendant contends that his probation officer violated defendant for his failure to complete the program. Defendant was then told that he was required to report to his probation officer in Kent County. However, defendant claimed he could not make the trip to Kent County because of transportation issues. After defendant failed to report to his probation officer on three separate dates in September 2016, the trial court issued a bench warrant for defendant's arrest for failing to comply with the requirements of his probation. Defendant was arrested in November 2016.

---

[1] This Court affirmed defendant's conviction in *People v Beavers*, unpublished order of the Court of Appeals, entered July 3, 2017 (Docket No. 330867).

-1-

According to the probation case report, defendant had a long history of committing violent crimes, including armed robbery, felony-firearm, assault of a jail employee, escape from jail, assault and battery, and second-offense operating a vehicle while intoxicated. Furthermore, the report indicated that defendant failed to complete sex offender therapy and absconded from probation. Defendant knew enough to give the police officer in Saginaw who arrested him a fake name and date of birth at the time of his arrest. Therefore, the probation agent recommended that defendant's probation be revoked and that he be sentenced to a term of incarceration with the Michigan Department of Corrections.

On November 30, 2016, the trial court held a probation violation hearing. At the outset of the hearing, the trial court asked defendant's counsel whether he was able to discuss the matter with defendant. Counsel stated that he had discussed the probation violation report and presentence update with defendant. The trial court then explained the following:

> [Defendant], you're on probation for criminal sexual conduct fourth degree charged as a fourth felony offender. That means that if you admit the violation and plead guilty to the petition, you face the revocation of your probationary status and confinement for up to 15 years or any lesser term designated by the Court. If you plead not guilty, you can have a hearing within 14 days to decide if you violated probation or not, and your attorney would then again appear to represent you at the hearing. If you plead guilty, there will be no further hearings, and the Court will sentence you within the limits explained.
>
> Essentially, it's charged here that you failed to report beginning on September the 6th of this year and had not reported to any time since then; that you have been discharged from Catholic Charities on August 17th for failing to offer ownership of deviant conduct or intent; and you were non-compliant with completing your treatment.

Do you understand those things and why you're here today?

The trial court stated that if defendant pleaded guilty to the probation violation, then it wanted "to hear all about it." However, if defendant pleaded not guilty to the probation violation, the trial court wished to hear more about the violation at a later hearing. Defendant stated that he would plead guilty and explain the violation to the trial court. The trial court asked defendant if it was true that defendant had not reported to the probation office since September. Defendant answered that it was true. He explained that the instructor of the sex offender class did not think he was a good fit for the class because he did not admit the sexual assault. As a result, defendant was "violated" by his probation officer for not attending the class. He was told to report to the Kent County probation office, however, the family car broke down, and he could not make the 2½ hour drive from Saginaw to Kent County.

Defense counsel argued that defendant tried to comply with his probation requirements to the best of his ability. According to counsel, Catholic Charities' refusal to accept defendant's explanation of the sexual assault was egregious. He attempted to go to the classes, but he was unsuccessfully discharged. His probation officer violated him for not successfully completing the class. However, defendant could not make the trip to Kent County. He informed his

probation officer that he was unable to secure transportation, but he did not abscond from probation or commit any other crimes. Therefore, it was clear that defendant was doing the best of his ability to comply with all the requirements of his probation.

The trial court stated the following:

> Well, I can sort of understand your position about the class, but it seems to me that you still must realize and did realize that you had to report to the probation officer. If the probation officer was going to bring a violation, then the probation officer would bring a violation, but you can't just sort of say, well, okay, and shrug it off. And in terms of getting over here from Saginaw, if you have to take a bus or something, you have to do what you have to do.
>
> Now, apparently when they arrested you in Saginaw, they charged you with making a false statement to the police by giving a false name and a false birth date, indicating a consciousness of guilt and a recognition that you were being sought after.
>
> The probation officer also notes that you have a long history of committing violent crimes, including armed robbery, felony firearm, assaulting a jail employee, escape, assault and battery, and a second offense drunk driving.

Defendant was sentenced as stated above. This appeal then ensued.

## II. ANALYSIS

On appeal, defendant first argues that the trial court violated his right to due process because it decided to revoke his probation based in part on uncharged, unadmitted, and unestablished conduct. "A trial court must base its decision that a probation violation was proven on verified facts in the record." *People v Breeding (On Remand)*, 284 Mich App 471, 487; 772 NW2d 810 (2009). "The evidence, viewed in a light most favorable to the prosecution, must be sufficient to enable a rational trier of fact to find a probation violation by a preponderance of the evidence." *Id.* "The decision to revoke probation is a matter within the sentencing court's discretion." *Id.* at 479 (quotation marks and citation omitted). However, because defendant failed to preserve his challenges at his parole hearing, we will review his unpreserved claims for plain error. *Id.* at 483.

> Probation violation hearings are summary and informal and are not subject to the rules of evidence or of pleading applicable in a criminal trial. The scope of these proceedings is limited and the full panoply of constitutional rights applicable in a criminal trial do not attach. However, probationers are afforded certain due process at violation hearings because of the potential for loss of liberty. Specifically, a probationer has the right to a procedure consisting of (1) a factual determination that the probationer is in fact guilty of violating probation, and (2) a discretionary determination of whether the violation warrants revocation. [*People v Pillar*, 233 Mich App 267, 269; 590 NW2d 622 (1998).]

"Moreover, only evidence relating to the charged probation violation activity may be considered at a violation hearing and only such evidence may provide the basis for a decision to revoke one's probation." *Id.* at 270.

In this case, it is undisputed that defendant pled guilty to the probation violations. The trial court was then required to determine whether defendant's violation warranted revocation of his probation. Although defendant argues on appeal that his failure to complete the sex offender therapy program was not his fault because the service provider would not accept him into the program because he was appealing his CSC-IV conviction, as quoted above, the trial court focused on defendant's failure to report in its decision to revoke probation.

In addition, defendant argues that the trial court improperly relied on unadmitted conduct in its decision to revoke his probation because the trial court considered his statements to the Saginaw police before his arrest. However, the record shows that the trial court referenced defendant's statements to the Saginaw police as evidence that defendant knew he was in violation of his probation. The trial court stated, "Now, apparently when they arrested you in Saginaw, they charged you with making a false statement to the police by giving a false name and a false birth date, indicating a consciousness of guilt and a recognition that you were being sought after." See *Pillar*, 233 Mich App 267 (stating that evidence relating to the charged probation violation may provide a basis for a decision to revoke probation).

Defendant also contends that the trial court improperly considered his criminal history in its decision to revoke his probation. However, although it is not explicit, the record implies that the trial court based its decision to revoke defendant's probation on defendant's guilty plea. Defendant admitted that he did not report to his probation officer as required by his probation agreement. Although the trial court did consider defendant's criminal history in its sentencing decision, this was not impermissible. *Breeding (On Remand)*, 284 Mich App at 487. Therefore, defendant having pled guilty to a violation of probation and the trial court having revoked defendant's probation based on his admission of said violation, defendant is not entitled to relief on this issue.

Next, defendant contends that he was prejudiced by the trial court's blended decision to revoke probation and impose a sentence. Again, defendant admitted to the probation violations. The trial court, after hearing an explanation from defendant and arguments from defense counsel relating to the violations, accepted defendant's guilty plea, revoked defendant's probation, and imposed a sentence in the middle of the sentencing guidelines. As previously discussed, the trial court did not plainly err in deciding to revoke defendant's probation. Moreover, even if the trial court could have been more clear and direct in its ultimate ruling, we believe that the trial court complied with the two-step process required by *Pillar*.

Defendant also argues that the trial court denied his due process right to a contested probation violation hearing. However, at the outset of the hearing the trial court asked whether defense counsel had the opportunity to review and discuss the probation violation report and presentence update. Defense counsel stated that he did. The trial court then explained to defendant that if he decided to plead guilty to the probation violations that he would "face the revocation of [his] probationary status and confinement for up to 15 years or any lesser term designated by the" trial court. The trial court explained that if defendant pleaded not guilty, he

was entitled to a hearing, at which he would be represented by counsel, to decide whether he violated probation. The trial court asked if defendant understood his options. Defendant answered that he did. Defendant then stated that he wished to plead guilty to the violations and explain the basis of his probation violations to the trial court. Accordingly, the record shows that defendant was given the choice to plead not guilty to the probation violations and have a contested hearing at a later date. However, defendant chose to plead guilty. "The ultimate decision to plead guilty is the defendant's . . . ." *People v Effinger*, 212 Mich App 67, 71; 536 NW2d 809 (1995). As such, the trial court did not deny defendant his due process rights by not holding a contested hearing. Based on the foregoing, the trial court did not violate defendant's due process rights in revoking his probation.

Next, defendant asserts that he was denied effective assistance of counsel at this probation violation hearing. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). The trial court's "factual findings are reviewed for clear error, while its constitutional determinations are reviewed de novo." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). However, because defendant failed to move for a new trial or an evidentiary hearing, this Court's review of his ineffective assistance of counsel claim is limited to errors apparent on the record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

> Most claims of ineffective assistance of counsel are analyzed under the test developed in [*Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984)]. Under this test, counsel is presumed effective, and the defendant has the burden to show both that counsel's performance fell below objective standards of reasonableness, and that it is reasonably probable that the results of the proceeding would have been different had it not been for counsel's error. But in [*United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984)], the United States Supreme Court identified three rare situations in which the attorney's performance is so deficient that prejudice is presumed. [*People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007) (citations omitted).]

"One of these situations involves the complete denial of counsel, such as where the accused is denied counsel at a 'critical stage' of the proceedings." *Id*. The second situation occurs when "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Id*. at 243 n 10 (quotation marks and citation omitted). The final situation occurs "where counsel is called upon to render assistance under circumstances where competent counsel very likely could not." *Id*. (quotation marks and citation omitted).

As an initial matter, defendant does not specify which *Cronic* situation applies to this case. However, none of defendant's claims rise to the level of constructive denial of counsel in *Cronic*. First, the fact that a different attorney represented defendant at the probation violation hearing than the attorney who represented him at his bench trial, does not establish that defendant was denied counsel at a critical stage, that counsel failed to subject the prosecution's case to adversarial testing, or that counsel was put in a situation in which competent counsel could not render effective assistance. *Frazier*, 478 Mich at 243, 243 n 10. "An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of

his choice appointed . . . ." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and citation omitted). As such, defendant has not shown a constructive denial of counsel in this regard.

Next, defendant contends that he was constructively denied effective assistance of counsel because the record does not indicate how much time his counsel spent preparing for the violation hearing. In support of this argument, defendant attached an e-mail from defense counsel stating that he believed that he was appointed to represent defendant on the day of the violation hearing. However, this e-mail was not part of the lower court record. As a result, this Court cannot consider this evidence "because it is impermissible to expand the record on appeal." *People v Powell*, 235 Mich App 557, 561 n 4; 559 NW2d 499 (1999).

Moreover, the record does not support that counsel did not have sufficient time to prepare for the violation hearing. The trial court asked counsel whether he had the opportunity to review and discuss defendant's probation violation report and presentence update at the beginning of the hearing. Counsel stated that he had reviewed those documents. Moreover, counsel argued to the trial court that defendant was trying to do everything possible to comply with his probation requirements. He contended that the service provider's refusal to allow him into the sex offender treatment program was egregious because defendant was telling the truth. However, counsel asserted that after defendant's probation officer violated him for failing to participate in the class, he attempted to meet with his probation officer in Kent County but was unable to make the trip. Counsel told the trial court that defendant informed his probation officer of his transportation issues and that defendant did not commit any other crimes. As a result, counsel asserted that incarceration would be "extreme in this matter." Based on the foregoing, the record shows that counsel had adequate time to prepare for the hearing and was fully informed of the facts of defendant's case. Thus, defendant's contention that he was constructively denied assistance of counsel because the record does not show how much time counsel spent preparing for the violation hearing is without merit.

Finally, defendant contends that he was constructively denied counsel because there was no break in the proceedings before sentencing. However, at the outset of the hearing, the trial court explained defendant's options to him. Specifically, the trial court explained that if defendant pleaded guilty to the probation violations, that there would be no further hearings, and that the trial court could revoke probation and impose a sentence within the appropriate guidelines range. Defendant said he understood. Defendant does not provide any support for his assertion that he was entitled to a separate sentencing hearing once the trial court decided to revoke his probation. Moreover, as discussed above, counsel told the trial court that he reviewed and discussed defendant's probation violation report and his updated presentence report with him. In addition, the record does not show that defendant requested a meeting with his attorney during the hearing to discuss sentencing. Based on the evidence in the record, defendant has not shown that he was constructively denied assistance of counsel because there was not a separate sentencing hearing. Therefore, defendant has failed to establish any of the situations stated in *Cronic*. *Frazier*, 478 Mich at 243, 243 n 10.

Defendant next argues that he was denied effective assistance of counsel under *Strickland*, because counsel did not request a contested violation hearing.

To prevail on a claim of ineffective assistance of counsel, a defendant must establish that "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *Sabin* (*On Second Remand*), 242 Mich App at 659 (restating *Strickland* test). "A defendant must overcome a strong presumption that the assistance of his counsel was sound trial strategy, and he must show that, but for counsel's error, the outcome of the trial would have been different." *Id*.

However, as discussed above, defendant pleaded guilty to the probation violations. The trial court explained that if defendant pleaded guilty, he would face possible revocation of his probation and incarceration, and he would not have another hearing. Defendant said he understood these consequences. See *Effinger*, 212 Mich App at 71 (concluding that trial counsel was not ineffective for failing to oppose the defendant's "decision to plead guilty by strenuously objecting or otherwise insisting that the case go to trial"). Accordingly, defendant has not shown that his counsel was deficient for not asking for a contested hearing. *Sabin* (*On Second Remand*), 242 Mich App at 659.

Furthermore, defendant has not shown that he was prejudiced by counsel's failure to request a contested hearing. Defendant asserts that witness testimony regarding his issues with the service provider would have resulted in a different outcome at his probation hearing. However, defendant pleaded guilty to the charged probation violations. In addition, the trial court was more concerned with defendant's failure to report to his probation officer than his failure to complete the sex offender treatment class. In fact, the trial court stated that it could "sort of understand [defendant's] position about the class, but it seem[ed] . . . that [defendant] still must realize and did realize that [he] had to report to the probation officer." As a result, defendant has not shown that absent his counsel's failure to request a contested hearing, that the outcome of his probation violation hearing would have been different. *Sabin* (*On Second Remand*), 242 Mich App at 659. Thus, defendant has not established that he was denied effective assistance of counsel at his probation violation hearing. *Id*.

Affirmed.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra