*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 16, 2019

Plaintiff-Appellee,

v

No. 341419
Monroe Circuit Court
LC No. 17-243397-FH

MARKEL DEMETRIUS MCKINLEY,

Defendant-Appellant.

Before: MURRAY, C.J., and GADOLA and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of delivery of less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), and two counts of possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). Defendant was sentenced, second or subsequent offense, MCL 333.7413(2), to 24 to 96 months for each offense, to be served concurrently. We affirm.

## I. FACTS

In November 2016, Monroe police officers conducted an undercover operation in which confidential informants bought illegal drugs from defendant at a house on Stone Street in Monroe. Thereafter, the police officers conducted surveillance of the house on December 5, 2016. Officers saw a woman enter the residence, then leave a few minutes later. When officers stopped her car, the woman had one gram of marijuana in a clear plastic bag in her possession. She later testified that she had purchased the marijuana from defendant at the Stone Street residence for $10. Shortly thereafter, police saw another car stop at the Stone Street house; a woman got out of the car and went into the house, then returned to the car a short time later. When police stopped the car a few minutes later, police found one gram of marijuana in a clear plastic bag in the car next to the driver's seat.

Police obtained a search warrant, then searched the Stone Street residence. Defendant was the only person in the house. Police searched defendant's pockets and found 43.19 grams of marijuana in plastic bags and $644. About six feet away from defendant, police found a duffle

bag in a closet that contained 137.76 grams of marijuana, packaged in five separate clear plastic bags, and contained in one larger gallon-sized bag.

On January 23, 2017, police again obtained a search warrant and searched the Stone Street house. The police found defendant there with five other people, and also found scales, sandwich bags, and 2.91 grams of marijuana in the kitchen. Defendant was sitting near the front door; next to him was 24.63 grams of marijuana in a Superman case that defendant testified belonged to him. The police also found 102 grams of marijuana in a mason jar in a closet, a "grinder" used to grind marijuana, and a "Zig-Zag" cigarette rolling paper machine. Police also seized a cell phone from defendant, and found $596 in cash in defendant's wallet.

Defendant was charged with delivery of marijuana and possession with intent to deliver marijuana, among other charges. Before trial, the prosecution notified defendant that they intended to introduce into evidence Facebook messages taken from defendant's cell phone, contending that the messages demonstrated defendant's ongoing enterprise of selling illegal drugs and were admissible under MRE 404(b). Over defendant's objection, the trial court held that the evidence showed a pattern or scheme, and ultimately admitted the Facebook messages under MRE 404(b).

Detective Derek Lindsay with the Monroe Police Department, qualified by the trial court as an expert in narcotics enforcement, testified about the content of the Facebook messages found on defendant's cell phone. The data retrieved from the cell phone included an email address and a Facebook account, both in defendant's name. According to Lindsay, the Facebook messages contained multiple conversations between defendant's Facebook account and other Facebook accounts in which individuals discussed buying marijuana from defendant. These conversations used terminology Lindsay associated with marijuana trafficking, such as requests for a "ten," which Lindsay interpreted as a $10 bag of marijuana, references to "trees," which he testified is a street term for marijuana, and a request for a "zip" of "loud," which Lindsay interpreted to mean an ounce of marijuana. Defendant's account responded to the inquiries about marijuana by stating where he could meet the prospective buyers, usually at the Stone Street residence, by telling individuals to "hit [him] up," or with a number, such as "250," that Lindsay testified was consistent with the price of an ounce of marijuana. Lindsay concluded that the other individuals were asking to buy drugs from defendant. Lindsay conceded that he could not be certain that defendant sent any of the Facebook messages, only that the messages were sent from defendant's account. By contrast, defendant testified that some of the conversations were made by someone else using his account, and that some of the other messages did not refer to drugs. At the conclusion of the evidence, the trial court gave a limiting instruction to the jurors, instructing them that the Facebook messages were "not introduced as proof of guilt" but instead as evidence of a plan or scheme of defendant.

Meanwhile, four days before trial, defendant's appointed counsel moved to withdraw, stating that there had been a "breakdown of the attorney/client relationship," that his relationship with defendant had always been "strained," and had "very recently hit a new low." Defense counsel also informed the trial court that defendant had become so confrontational that he could no longer communicate with him. Defendant informed the trial court that he was dissatisfied with counsel's performance. The trial court denied the motion to withdraw because it had been made on the eve of trial.

On the first day of trial, defendant continually argued with his attorney, and informed the trial court that his attorney was not representing him correctly. At the beginning of the second day of trial, defendant stated that he wanted to fire his attorney for "improper counsel." The trial court denied the request. At the conclusion of trial, the trial court relieved the attorney of his obligation to represent defendant and informed defendant that a new attorney would represent him from that point forward.

The jury thereafter convicted defendant of delivery of less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), and two counts of possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*).

## II. DISCUSSION

### A. EVIDENCE OF OTHER ACTS

Defendant first contends that the trial court abused its discretion by permitting into evidence the records from his cell phone of the Facebook communications, arguing that the records are impermissible evidence of prior bad acts. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion, while reviewing any preliminary legal questions of law de novo. *People v Mann*, 288 Mich App 114, 117; 792 NW2d 53 (2010). A trial court abuses its discretion if its decision falls outside the range of reasonable and principled outcomes. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

To be admissible at trial, evidence must be relevant, MRE 402, meaning that it must have the "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Relevant evidence may be excluded, however, "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403.

The admission of evidence of other crimes, wrongs, or acts is governed by MRE 404(b), which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Thus, for evidence of other acts to be admissible, the evidence (1) must be offered for a proper purpose and not to show that the defendant acted in conformity with the other acts, (2) must be relevant to an issue of fact that is of consequence in the trial, and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *People v Knox*,

469 Mich 502, 509; 674 NW2d 366 (2004). Evidence is unfairly prejudicial when marginally probative evidence might be given undue weight by the jury. *People v Dixon-Bey*, 321 Mich App 490, 513; 909 NW2d 458 (2017). Our Supreme Court has also stated that "[f]or other acts evidence to be admissible there must be such a concurrence of common features that the uncharged and charged acts are naturally explained as individual manifestations of a general plan." *People v Hine*, 467 Mich 242, 251; 650 NW2d 659 (2002).

In this case, the prosecution sought to admit the Facebook messages to demonstrate that defendant was selling marijuana as part of a plan, scheme, or system, and was not merely using marijuana legally as defendant contended. The detective analyzing the data testified that the numerous messages extracted from the phone were attributed to defendant's Facebook account and demonstrated an ongoing system of drug trafficking being conducted in the same manner as the charged offenses. Contrary to defendant's assertion that he possessed marijuana for legal, personal use only, the Facebook messages demonstrated that he had engaged in the sale of marijuana multiple times in the past with a concurrence of features with the acts charged, such as the place of sale, the substance sold, the amounts sold, and the manner of packaging, demonstrating that he was engaged in a plan, scheme, or system of selling marijuana. Furthermore, there was no indication that the admission of the Facebook messages was unfairly prejudicial to defendant, and the trial court gave a limiting instruction to the jurors, instructing them that the Facebook messages were "not introduced as proof of guilt" but instead as evidence of defendant's plan or scheme. Because juries are presumed to follow their instructions, *People v Bruner*, 501 Mich 220, 228; 912 NW2d 514 (2018), we conclude that the trial court did not abuse its discretion by admitting the Facebook messages into evidence.

## B. SUBSTITUTION OF COUNSEL

Defendant next contends that the trial court abused its discretion by declining to appoint substitute counsel to represent him at trial. We disagree.

The United States and Michigan constitutions grant the right to counsel in all criminal prosecutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Marsack*, 231 Mich App 364, 372; 586 NW2d 234 (1998). But although an indigent defendant is guaranteed the right to counsel, he or she is not necessarily guaranteed the right to counsel of his or her choice. *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015). We review for an abuse of discretion the decision of a trial court denying a defendant's request for substitution of appointed counsel. *Id*.

A defendant is entitled to substitution of appointed counsel if (1) there is good cause to discharge the first attorney, and (2) substitution of counsel does not unreasonably disrupt the judicial process. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012). Whether good cause has been shown depends upon the individual facts in each case. *Id*. Good cause is not demonstrated merely because the defendant lacks confidence in counsel or generally is unhappy with counsel. *McFall*, 309 Mich App at 383. Good cause may exist, however, when (1) the defendant and appointed counsel develop a legitimate difference of opinion about a fundamental trial tactic, (2) there is breakdown in communication in the relationship, or (3) defense counsel has shown a lack of interest or diligence. *Id*. Decisions about defense strategy, including what evidence to present and what arguments to make, are matters of trial strategy, and

disagreements regarding these issues do not warrant substitution of counsel. *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). We also note that a defendant is not entitled to substitution of counsel if the defendant deliberately causes a breakdown of the attorney-client relationship by not cooperating with his counsel, then asserts the breakdown as a basis for the request for new counsel. *Buie*, 298 Mich App at 68.

At trial, defendant's primary reason for requesting new counsel was that he wanted his attorney to challenge the validity of certain exhibits during the prosecution's case in chief, rather than waiting to do so later in trial, as counsel planned. A disagreement with regard to trial strategy does not warrant appointment of substitute counsel. *Strickland*, 293 Mich App at 398. Defendant also contended that there had been a breakdown in the attorney-client relationship between defendant and his attorney, which in some circumstances may warrant substitution of counsel. Any such breakdown in the relationship, however, must be weighed against whether substitution of counsel would unreasonably disrupt the judicial process. *McFall*, 309 Mich App at 382-383. Moreover, a review of the record in this case indicates that defendant brought about the breakdown by being confrontational with his attorney and disruptive in his attorney's efforts to proceed at trial. We therefore conclude that, under the circumstances of this case, the trial court's denial of the motion for substitution of counsel did not fall outside the range of reasonable and principled outcomes. See *Mahone*, 294 Mich App at 212.

## C. SUFFICIENCY OF THE EVIDENCE

Defendant also contends that there was insufficient evidence to convict him. Again, we disagree. We review challenges to the sufficiency of the evidence de novo to determine if any rational trier of fact could determine that the essential elements of the crime were proven beyond a reasonable doubt, and we resolve all conflicts in the evidence in favor of the prosecution. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012). We will not interfere with the role of the factfinder in determining the weight of the evidence or the credibility of witnesses. *People v Kanaan*, 278 Mich App 594, 618-619; 751 NW2d 57 (2008).

In this case, defendant was convicted of delivery of less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*), and two counts of possession with intent to deliver less than five kilograms of marijuana, MCL 333.7401(2)(d)(*iii*). The elements of delivery of less than five kilograms of marijuana are that (1) the defendant delivered (2) marijuana or a mixture containing marijuana, (3) in the amount of less than five kilograms, (4) knowing that he or she was delivering marijuana. See *People v Williams*, 294 Mich App 461, 470; 811 NW2d 88 (2011). To establish possession with intent to deliver, the prosecution must show that (1) the substance is a narcotic, (2) the weight of the substance is less than five kilograms, (3) defendant was not authorized to possess the substance, and (4) the defendant knowingly possessed the substance intending to deliver it, which includes both possession and intent. Intent to deliver may be inferred from the quantity of drugs possessed. See *People v McGhee*, 268 Mich App 600, 611, 622-623; 709 NW2d 595 (2006). We note that circumstantial evidence, and reasonable inferences drawn from that evidence, may be sufficient to prove the elements of the crime. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005).

Here, the prosecution presented evidence on each of the elements of the offenses charged. On December 5, 2016, police found defendant alone in the Stone Street house with 43.9 grams of

marijuana in plastic bags in his pockets and 137.76 grams of marijuana in a bag in the closet of the room he was occupying. Defendant had a large amount of cash on his person. On January 23, 2017, police again found defendant at the Stone Street house, this time sitting next to the front door with 24.63 grams of marijuana next to him in a case. The officers also found 2.91 grams of marijuana in the kitchen and 102 grams of marijuana in the closet, together with scales and plastic bags. Again, defendant had a large amount of cash on his person. A prosecution witness testified that marijuana is frequently packaged in individual plastic bags for sale and delivery, and that when an individual possesses more than half an ounce of marijuana it is indicative of drug trafficking. One buyer testified that on December 5, 2016, she, in fact, bought marijuana from defendant at the Stone Street house. The Facebook messages showed evidence of defendant's Facebook account being used repeatedly to arrange the sale of marijuana to people using other Facebook accounts. In light of the evidence, a rational juror could determine beyond a reasonable doubt that defendant delivered marijuana, and possessed marijuana with the intent to deliver it.

Affirmed.

/s/ Christopher M. Murray
/s/ Michael F. Gadola
/s/ Jonathan Tukel

-6-