*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BRENT, Minors.

UNPUBLISHED
June 09, 2025
2:15 PM

No. 373125
Oakland Circuit Court
Family Division
LC No. 21-883758-NA

Before: MALDONADO, P.J., and M. J. KELLY and RIORDAN, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to her children under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In September 2021, respondent's five-month old daughter was taken to the hospital in acute distress and in the midst of a seizure. She was intubated after she stopped breathing and was eventually transferred to a children's hospital. The child was diagnosed with a traumatic brain injury, numerous retinal hemorrhages, multiple fractures, and quarter-sized burns on her hand and chest. The director of the Child Protection team at the children's hospital, Dr. Bradley Norat, opined that the burns were intentionally inflicted by holding a lighter to the child's skin. Further, he opined that her brain injury was caused by "nonaccidental trauma." The child was hospitalized for approximately one month. It is undisputed that she sustained brain damage and that, as a result of her injuries, she would be permanently physically, visually, and cognitively impaired.

When questioned about the cause of the child's injuries, respondent suggested explanations that were both implausible and inconsistent with the severe nature of her daughter's injuries. Respondent was initially charged with two counts of second-degree child abuse, and the prosecutor later added a charge of first-degree child abuse. Additionally, petitioner, the Department of Health and Human Services, filed a petition seeking removal of the child from respondent's care and asking the court to take jurisdiction over the child and terminate respondent's parental rights. Petitioner alleged that respondent had either physically abused the child or had failed to protect

-1-

her from the abuse. The record reflects that respondent had been living with her boyfriend and his parents at the time the child was injured and that, the day that the child was taken to the hospital, respondent had left the child in the care of her boyfriend and her boyfriend's father.

The court authorized the removal of that child from respondent's care and she was placed in a foster home. Thereafter, while awaiting adjudication, respondent gave birth to another daughter. Petitioner filed a petition seeking removal of that child from respondent's care and asking the court to take jurisdiction over the infant and terminate respondent's parental rights to her. After the court authorized her removal from respondent's care, she was placed in the same foster home as her older sister.

Following an adjudication trial, the court found statutory grounds to exercise jurisdiction over both children under MCL 712A.2(b)(1) and (2). It also found by clear and convincing evidence that there were statutory grounds to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). Subsequently, following a best-interests hearing, the court found that termination of respondent's parental right was in the children's best interests. This appeal follows.

## II. APPOINTMENT OF A SUCCESSOR GUARDIAN AD LITEM

### A. STANDARD OF REVIEW

Respondent first argues that the trial court erred by failing to immediately appoint a successor guardian ad litem (GAL) to represent her interests after the first GAL withdrew due to scheduling conflicts. We review for an abuse of discretion challenges to a court's decision to appoint a GAL for a respondent-parent in a child-protective proceeding. See MCR 3.916; *In re Nikooyi*, 341 Mich App 490, 494; 991 NW2d 619 (2022). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *In re COH, ERH, JRG, & KBH*, 495 Mich 184, 202; 848 NW2d 107 (2014) (quotation marks and citation omitted).

### B. ANALYSIS

Under MCR 3.916(A) a trial court "may" appoint a GAL for a respondent-parent "if the court finds that the welfare of the party requires it." Here, on January 6, 2022, respondent's lawyer requested that the trial court appoint a GAL because respondent was having a difficult time understanding the proceedings and because respondent had had an individualized education plan when she had been a high-school student. The court appointed a GAL for respondent. In April 2023, that GAL moved to withdraw as GAL because he had conflict with a scheduled trial date. The GAL requested that the court appoint a substitute GAL.

In response to the motion, the court invited the parties an opportunity to respond to the GAL's motion. The court specifically requested that the parties address:

> the issue of whether any prejudice may come to respondent from withdrawal of Mother's current GAL and appointment of new GAL for Mother, especially in light of the fact that the trial has been adjourned multiple times and Mother's current GAL and her [sic] continued appointment would require further delay of trial.

No one responded to the motion. Thereafter, the court granted the GAL's motion to withdraw. The court did not appoint a substitute GAL, however. Instead, the court noted that, in the absence of a motion from respondent or petitioner, it would not appoint a successor GAL "at this time." The court explained that respondent was represented by a court-appointed lawyer "who has not raised any concerns about the ability to communicate with [her]." The court found that there was no "need in this matter" for the appointment of a successor GAL.

Given that there was nothing on the record indicating that there was a need for a replacement GAL at the time that the first GAL withdrew, we conclude that the trial court did not abuse its discretion by declining to make such an appointment.[1]

### III. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Respondent next argues that her lawyer provided ineffective assistance by failing to advise her of her rights under the Fifth Amendment before she testified at the adjudication trial. She also contends that her lawyer provided ineffective assistance by failing to "enlist the support of an expert witness." "When no *Ginther*[2] hearing has been conducted, our review of the defendant's claim of ineffective assistance of counsel is limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).[3]

### B. ANALYSIS

A respondent-parent has a constitutional right to the effective assistance of a lawyer in child-protective proceedings. *In re Casto*, 344 Mich App 590, 611; 2 NW3d 102 (2022). A lawyer is presumed to be effective and a respondent-parent "bears a heavy burden of proving otherwise." *Id*. at 612. In order to establish that his or her lawyer provided ineffective assistance, the respondent-parent must show (1) that his or her lawyer's performance fell below an objective standard of reasonableness, and (2) that, but for, that deficient performance, "there is a reasonable probability that the outcome of the respondent's trial would have been different." *Id*. at 611-612 (quotation marks, citation, and brackets removed).

### 1. FAILURE TO ADVISE

Respondent first contends that her lawyer was ineffective because she allowed respondent to testify at the adjudication trial without first advising respondent of her Fifth Amendment right

---

[1] Although the court ultimately appointed a second GAL, that decision was based upon the circumstances that existed in June 2023. It is not dispositive as to whether the "welfare" of respondent required the appointment of a GAL in April 2023.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Although termination of parental rights proceedings are not criminal in nature, the Court has routinely applied principles of effective assistance in the criminal context to child protective proceedings by analogy. *In re Martin*, 316 Mich App at 85; 896 NW2d 452 (2016).

to remain silent. "The privilege against self-incrimination permits a defendant to refuse to answer official questions in any other proceeding, no matter how formal or informal, if the answer may incriminate him or her in future criminal proceedings." *In re Blakeman*, 326 Mich App 318, 333; 926 NW2d 326 (2018); see US Const, Am V and Const 1963, art 1, § 17. As relevant to this case, it applies in child-protective proceedings if "a criminal prosecution might follow, regardless of how likely or unlikely that outcome may seem." *Id*. at 332. Here, given that respondent had been charged criminally with child abuse, it is apparent that a criminal prosecution was very likely to occur after she testified at the adjudication trial. The record is devoid of any indication as to the reason why her lawyer failed to advise respondent of her right to remain silent during the child-protective proceedings. We therefore conclude that respondent's lawyer's performance fell below an objective standard of reasonableness when she failed to advise respondent of her constitutional rights before she testified.

Respondent, however, has failed to establish that, but for her lawyer's deficient performance, the outcome of the child-protective proceedings would have been different. First, respondent has not presented an offer of proof indicating that if she had been advised of her privilege against self-incrimination that she would have invoked it and declined to testify at the adjudication trial. Rather, respondent's lawyer GAL brought the failure to advise respondent of her right against self-incrimination to the court's attention on the second-day of the adjudication trial. He did not, however, ask that her testimony be stricken because he was uncertain whether it was strategically better for her to have testified or to have not testified. See *In re Blakeman*, 326 Mich App at 334 n 4 (recognizing that the Fifth Amendment does not preclude adverse inferences where the privilege against self-incrimination is claimed by a party to a civil action). Absent a showing that she would have opted to not testify if she had been properly advised, we conclude that respondent cannot show that there is a reasonable probability the outcome of the proceedings would have been different but for her lawyer's deficient performance.

Next, the trial court expressly held that it was not considering respondent's testimony when it found statutory grounds for jurisdiction and termination of respondent's parental rights. Instead, the court based its findings upon the other testimony that was presented during the proceedings. That testimony substantially supported that respondent had physically abused the child resulting in permanent physical, visual, and cognitive injuries. Specifically, Dr. Norat testified that the child's injuries were caused by nonaccidental trauma. The injuries included a traumatic brain injury, retinal hemorrhages, multiple fractures, and burns on her chest and hand. Dr. Norat opined that her traumatic brain injury occurred shortly before she was brought to the hospital. However, the burns to her chest and hand were in various stages of healing and her fractures were at least 10 to 14 days old, which indicated that the abuse had been perpetrated over time. Respondent gave multiple implausible explanations for how the child could have been hurt. Additionally, she told law enforcement that "it was her fault," and she reported that she was the only one alone with the child and that no one else could have caused her injuries. Alternatively, there was also evidence that respondent failed to protect the child from the abuse. Again, the child had numerous nonaccidental injuries in various stages of healing. There was testimony that the child would have shown signs of distress related to her injuries. These facts allowed for an inference that the earlier abuse would have been apparent to respondent, given that it occurred on more than one occasion over a period of at least two weeks. This evidence suggested that respondent was aware of the need to protect the child from her boyfriend and his parents, who were the only other individuals in the household.

Establishing either that respondent was the abuser or that she failed to protect her child would have permitted the trial court to take jurisdiction over the children and find that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (g), (j), (k)(*iii*), (k)(*iv*), and (k)(*v*). It was not necessary for the evidence to conclusively establish whether respondent, her boyfriend, or her boyfriend's parents perpetrated the physical abuse. See *In re Ellis*, 294 Mich App 30, 35-36; 817 NW2d 111 (2011) (holding that "termination of parental rights under MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (j) and (k)(*iii*) is permissible even in the absence of definitive evidence regarding the identity of the perpetrator when the evidence does show that the respondent or respondents must have either caused or failed to prevent the child's injuries."). Indeed, "when there is severe injury to an infant, it does not matter whether respondents committed the abuse at all, because under these circumstances there was clear and convincing evidence that they did not provide proper care." *Id*. at 34-35. Accordingly, even without respondent's testimony—which the trial court did not consider—there was clear and convincing evidence that respondent either abused her daughter or failed to protect her from the abuse.

Finally, respondent suggests that she was prejudiced because her testimony in the child-protective proceedings was, in fact, used against her in the criminal matter. Respondent suggests that, approximately three months after her testimony, the prosecution in the criminal matter added a charge of first-degree child abuse. However, the relevant inquiry is whether the outcome of the child-protective proceedings would have been different. The fact that the outcome of the criminal matter may have been adversely affected is, therefore, not dispositive as to the proceedings in this case.[4] And, even if it were, given that the record does not even indicate that respondent would have chosen not to testify if she had been properly advised of her Fifth Amendment rights, respondent cannot even show that a different result would have occurred in the criminal proceedings.

For the foregoing reasons, respondent cannot establish that her lawyer provided constitutionally deficient assistance.

## 2. FAILURE TO INVESTIGATE

Respondent argues that her lawyer provided constitutionally deficient assistance because she did not enlist the support of an expert witness. Respondent has the burden of establishing the factual predicate for her claim of ineffective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The record, however, is devoid of evidence that respondent's lawyer failed to consult with expert witnesses. Moreover, respondent has directed this Court to nothing indicating what type of expert should have been consulted or what such an expert would have testified to had he or she been called as a witness at trial. Instead, she merely speculates that if her lawyer had consulted an "expert" and presented testimony from an "expert" that the outcome of the proceedings would have been different.

---

[4] Nothing in this opinion should be read to preclude respondent from raising a 5th Amendment challenge in her criminal case. Rather, our opinion is limited to whether respondent is entitled to reversal in this child-protective proceeding because of ineffective-assistance from her lawyer.

## IV.  SUBSTITUTION OF LAWYER

### A.  STANDARD OF REVIEW

Respondent lastly argues that the trial court abused its discretion by denying her oral motion for substitution of her lawyer at a June 2023 permanency planning hearing.  We review for an abuse of discretion a trial court's decision to deny a request for substitution of a lawyer.  *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001).

### B.  ANALYSIS

A respondent in a child protective proceeding has the right to the assistance of a lawyer. *In re Casto*, 344 Mich App at 611.  However, an indigent respondent is not entitled to the lawyer of her choice or to have the trial court replace the originally appointed lawyer upon request.  *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015).  The trial court may appoint a substitute lawyer "only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process."  *Id.* at 382-383 (quotation marks and citation omitted).  Good cause may exist when "a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest."  *Id.* at 383. "[A] mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason," or simply because a defendant is generally unhappy with counsel's representation is insufficient.  *Id.* at 382-383.

In this case, respondent was represented by multiple court-appointed lawyers.  The lawyers were either replaced at respondent's request or at the request of the lawyer based upon a breakdown of the attorney-client relationship.  Thus, at the outset, the record reflects that the court did, in fact, appoint a substitute lawyer for respondent on multiple occasions.  Respondent takes issue with the court's decision to not appoint a substitute lawyer at a hearing that occurred between the first day of the adjudication trial and the second day of the adjudication trial.  At that hearing, respondent stated her belief that her lawyer was not acting in her best interests.  In response, her lawyer suggested that if respondent was unhappy with the representation then it might be appropriate to appoint a new lawyer.

The court took the matter under advisement but ultimately denied the request.  The proceedings had been initiated in October 2021.  The matter had been adjourned and delayed several times for a number of reasons before the adjudication trial finally commenced on June 1, 2023.  The request for substitution of her lawyer was respondent's third such oral request.  The court had previously accommodated her requests.  In denying the instant request, the trial court considered the fact that the request was made in the middle of the ongoing adjudication trial, and granting a substitution would prejudice respondent and cause an undue delay in the proceedings. Moreover, the court noted that it had observed respondent's lawyer's representation during the first day of trial and, in the court's opinion, the lawyer "exhibited being diligent and prepared in trial thus far, is following court procedures, and is defending the petitions."

Considering the foregoing, the trial court did not abuse its discretion when it denied respondent's request for the substitution of her lawyer.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly
/s/ Michael J. Riordan