# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DEMETRIUS ORESE-CHARLES ARMOUR,

Defendant-Appellant.

UNPUBLISHED
September 20, 2018

No.  337434
Wayne Circuit Court
LC No.  16-002452-02-FC

Before:  M. J. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM.

Defendant, Demetrius Armour, appeals as of right his conviction of first-degree premeditated murder, MCL 750.316(1)(a).  The trial court sentenced Armour, who was 17 years old on the date of the offense, to a prison term of 40 to 60 years.  Because there are no errors warranting reversal, we affirm.

## I.  BASIC FACTS

Armour's conviction arises from a gang-related shooting at the Eastland Mall in Harper Woods, which resulted in the death of Tyrell Lane.  Armour, along with codefendants Brendon Stanton-Lipscomb, Tyler Tate, and Tyshon Taylor were all members or supporters of the street gangs Eastside Ghetto Boys (EGB) or Rob Gang.  Stanton-Lipscomb had formed the Rob Gang after the September 2013 shooting death of his cousin and close friend, Robert Carter.  Members of the Hob Squad gang, which is a subgroup of the Seven Mile Bloods gang, were believed to be responsible for Carter's death.  The Hob Squad gang and the Rob Gang were rivals and were hostile to each other.  The victim in this case, Lane, was a Hob Squad member.

On December 26, 2015, Taylor contacted Stanton-Lipscomb to inform him that he and Tate were at the Eastland Mall where they saw Lane and overheard him disparaging the Rob Gang.  Armour and Stanton-Lipscomb drove to the mall.  Stanton-Lipscomb went inside the mall while Armour waited in the driver's seat of the car, which was near the entrance to the Burlington Coat Factory store.  Stanton-Lipscomb returned to the car, but then left again and concealed himself behind a pillar outside the Burlington store.  Armour testified that before Stanton-Lipscomb left the vehicle, he told Armour "If I don't make it back, I love you."  Armour continued to wait in the driver's seat of the car outside the store.  Shortly thereafter, Lane, who was being escorted by Tate, exited the Burlington store, at which time Stanton-Lipscomb

-1-

emerged from behind the pillar and shot Lane several times, killing him. Stanton-Lipscomb returned to the waiting car and Armour sped away.

The police initially regarded Tate as a targeted victim, but further investigation led them to believe that both Tate and Taylor were participants in the murder. Armour, Stanton-Lipscomb, Tate, and Taylor were all charged with first-degree premeditated murder in connection with Lane's shooting death, but they were prosecuted separately. Stanton-Lipscomb was convicted of first-degree premeditated murder and possession of a firearm during the commission of a felony by a jury in June 2016.[1] Thereafter, Taylor pleaded guilty to a reduced charge of second-degree murder, MCL 750.317.[2] In April 2017, another jury convicted Tate of first-degree premeditated murder, as well as making a false report of a felony, MCL 750.411a(1)(B), and lying to a police officer in a criminal investigation, MCL 750.479c(2)(d)(*i*). Armour was convicted in the instant case in January 2017.

## II. SUBSTITUTION OF COUNSEL

### A. STANDARD OF REVIEW

Armour argues that the trial court erred by denying his request for a substitute counsel. The trial court's decision regarding substitution of counsel is reviewed for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). To the extent that this issue presents a constitutional question, review is de novo. *Id*.

### B. ANALYSIS

Although an indigent defendant is guaranteed the right to the assistance of a lawyer, he or she is not guaranteed a lawyer of his or her choice. *Traylor,* 245 Mich App at 462. However, a defendant is entitled to substitution of his lawyer if discharge is for good cause and does not unreasonably disrupt the judicial process. *People v Buie (On Remand),* 298 Mich App 50, 67; 825 NW2d 361 (2012). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and citation omitted). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id*. at 383 (citation and quotation marks omitted).

---

[1] Stanton-Lipscomb has appealed his convictions appeal in Docket No. 337433, which has been submitted with the instant appeal.

[2] Tate has appealed his convictions in Docket No. 338360, which has been submitted with the instant appeal.

A trial court is obligated to inquire about the truth of a defendant's allegations that there is a dispute which has led to the destruction of communication and a breakdown in the attorney-client relationship. *People v Bass*, 88 Mich App 793, 802; 279 NW2d 551 (1979). "When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusions." *People v Ginther*, 390 Mich 436, 441-442; 212 NW2d 922 (1973).

Here, shortly before trial, Armour informed the trial court that he wanted a different lawyer. The court placed him under oath and allowed him to explain the reasons behind his request to discharge his lawyer. Armour stated that he thought his lawyer was working with the prosecutor, was not fighting for him, and was not working in his best interests. The only example that Armour provided was an unsatisfactory plea offer whereby Armour would plead guilty to second-degree murder with a sentence cap of 15 years, which Armour claimed was later increased to 25 years. After Armour explained his position, the trial court questioned Armour's lawyer about his trial preparation. Armour's lawyer stated that he had investigated the case, made himself available to Armour, and explained to him the strong aspects of the prosecution's evidence. Armour's lawyer also stated that he questioned Armour to ensure that he understood the communications between him and his lawyer. The trial court remarked that Armour's lawyer had filed several well-written motions on Armour's behalf, had appeared at every hearing, and was committed to representing Armour. And, in denying Armour's request for a new lawyer, the court noted that it could not just fire a lawyer because Armour wanted a different lawyer.

On appeal, Armour complains that the trial court did not sufficiently inquire into his complaints about his lawyer's plea negotiations with the prosecutor. There was no need for the trial court to further inquire into this issue because Armour clearly explained that he blamed his lawyer for what he perceived as unsatisfactory progress in plea negotiations. Armour's dissatisfaction does not constitute a legitimate difference of opinion regarding a fundamental strategy. *McFall*, 309 Mich App at 383. Similarly, Armour's general assertions that he did not believe that his lawyer was "fighting" for him or acting in his best interests were insufficient to establish good cause for substitution of counsel. These types of expressions of a general unhappiness or lack of confidence with an appointed lawyer, unsupported by a substantial reason, do not amount to adequate cause for substitution. *Id*. Accordingly, the record does not support Armour's claim that the trial court failed to adequately inquire into his dissatisfaction with his lawyer, and the trial court did not abuse its discretion by denying Armour's request to discharge his lawyer.

## III. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Armour argues that the evidence was insufficient to prove his guilt under an aiding or abetting theory. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Perry*, 317 Mich App 589, 599; 895 NW2d 216 (2016). The evidence is examined in the light most favorable to the prosecution "to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt." *Id*. "This Court will not

interfere with the jury's role of determining the weight of evidence or the credibility of witnesses." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999).

## B. ANALYSIS

"The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). The prosecution's theory was that Armour aided or abetted Stanton-Lipscomb in murdering Lane. In order to support a conviction under an aiding and abetting theory:

> [T]he prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. [*People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999) (quotation marks and citations omitted).]

"[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Armour was Stanton-Lipscomb's close associate. They both belonged to the Rob Gang, which Stanton-Lipscomb had formed after the shooting death of Stanton-Lipscomb's cousin and close friend, who allegedly was killed by members of the Hob Squad gang. Thereafter, the Rob Gang and the Hob Squad gang were hostile to each other. Armour and Stanton-Lipscomb thus shared a common hostility toward Lane, a Hob Squad member. Armour came with Stanton-Lipscomb to the Eastland Mall after Stanton-Lipscomb communicated with Taylor. Although Stanton-Lipscomb drove to the mall, Armour took his place in the driver's seat after they arrived. In view of the close association and the gang affiliation between Armour and Stanton-Lipscomb, and the ongoing gang hostility between the Rob Gang and the Hob Squad, of which Lane was a member, and Armour's decision to accompany Stanton-Lipscomb to the mall after learning that a Hob Squad member was there who had denigrated the Rob Gang, the jury could infer that Armour and Stanton-Lipscomb were working together and went to the mall with a common purpose and plan.

In addition, according to the surveillance evidence, after arriving at the mall, Armour waited in the car, which was parked just outside the Burlington store, while Stanton-Lipscomb went inside. Thereafter, Stanton-Lipscomb briefly returned to the car before ultimately taking up a position outside the Burlington exterior entrance where he could see into the Burlington store while Tate escorted Lane to the exit. Armour was close enough to observe this activity from the driver's seat of the car. In addition, Armour's testimony makes clear that on the way to the mall, Stanton-Lipscomb stated he was going to kill someone and, before, he left the vehicle, he told him that "if I don't make it back, I love you." Although Armour denied knowing that Stanton-Lipscomb was literally going to kill someone or that Stanton-Lipscomb, in fact, planned to kill Lane, the jury was not required to credit his denial. There is also evidence that the license plate

on Armour's vehicle was partially obscured, and video footage showed Armour going to the rear of the car while it was parked at the mall. The jury could infer from this evidence that Stanton-Lipscomb provided details of the plan to shoot Lane to Armour, who then concealed part of the license plate in order to prevent easy identification of the vehicle. Surveillance footage also showed that while Armour was waiting in the driver's seat of the car and Stanton-Lipscomb was preparing to shoot Lane, the brake lights on the car were lit, which supported an inference that the car's gear position was in drive to prepare for a quick getaway. When Stanton-Lipscomb returned to the car after the shooting, Armour sped off, running stop signs and red lights while traveling away from the mall. "Evidence of flight is admissible to support an inference of consciousness of guilt and the term flight includes such actions as fleeing the scene of the crime." *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (citation, quotation marks, and brackets omitted).

Viewed in a light most favorable to the prosecution, we conclude the evidence was sufficient to allow the jury to find beyond a reasonable doubt that Armour willingly agreed to act as a getaway driver, with knowledge of Stanton-Lipscomb's intention to shoot and kill Lane, a rival gang member. Accordingly, the evidence was sufficient to support Armour's conviction of first-degree murder under an aiding or abetting theory.

## IV. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Armour next contends that the prosecutor engaged in misconduct by intentionally eliciting prejudicial testimony in violation of an earlier ruling by the trial court. To preserve a claim of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *Bennett*, 290 Mich App at 475. Armour objected to Detective Michael Morrish's testimony regarding the contents of a video on the ground that the trial court had previously suppressed the video, but he did not object on the ground of prosecutorial misconduct, nor he did not request a curative instruction in response to the brief answer that Morrish provided. Accordingly, Armour's claim of prosecutorial misconduct is unpreserved. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

### B. ANALYSIS

During trial, the trial court granted Armour's motion to exclude a video recording that depicted Stanton-Lipscomb brandishing a handgun in Armour's presence. At the time, the prosecutor asked the court if he could question his witness about the content of the video. The court responded that it could not tell him because it did not know what he was going to ask or if there would be an objection. Subsequently, the prosecutor asked Detective Michael Morrish to describe the contents of a video he extracted from a cell phone. The detective stated that the video depicted several persons smoking "and waving a small semi-automatic firearm." Armour's lawyer objected, and the trial court sustained the objection, stating, "I thought I made my intentions very clear, on the record before. You cannot continue this line of questioning." Armour now argues that the prosecutor deliberately violated the trial court's earlier ruling

excluding the video and that this misconduct denied him a fair trial because it allowed highly prejudicial testimony to be heard by the jury.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Bennett*, 290 Mich App at 475. "A finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *People v Dobek*, 274 Mich App 58, 76; 732 NW2d 546 (2007). In this case, because the trial court left open the possibility that a witness might be permitted to testify regarding the contents of the video and expressed that it would decide the matter later if there was an objection, there is no evidence that the prosecutor's questions about the content of the video were done in bad faith. Armour's claim of prosecutorial misconduct is, therefore, without merit.

## V. SENTENCE

### A. STANDARD OF REVIEW

Finally, Armour argues the trial court erred by failing to consider the factors listed in *Miller v Alabama*, 567 US 460, 479; 132 S Ct 2455; 183 L Ed 2d 407 (2012), when it sentenced him to 40 to 60 years in prison. He argues that the sentence imposed is unreasonable and disproportionate, and that his lawyer was ineffective at sentencing because he failed to present psychological evaluations and other mitigating information to the trial court. The trial court imposed a term-of-years sentence under MCL 769.25(9). A juvenile offender's sentence under MCL 769.25 is reviewed for an abuse of discretion. *People v Skinner*, ___ Mich ___, ___; ___ NW2d ___ (2018) (Docket No. 152448), reh pending; slip op at 41. The trial court abuses its discretion when it reaches a decision that is outside the range of reasonable outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A sentence is unreasonable only when it violates the principle of proportionality, i.e., when it is disproportionate "to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 471, 474; 902 NW2d 327 (2017) (quotation marks and citation omitted). Any findings of fact made by the trial court at sentencing are reviewed for clear error and any questions of law are reviewed de novo. *Skinner*, ___ Mich at ___; slip op at 40-41 n 27. Unpreserved challenges to the effectiveness of a lawyer are "limited to mistakes that are apparent on the record." *People v Mack*, 265 Mich App 122, 125; 695 NW2d 342 (2005).

### B. ANALYSIS

The United States Supreme Court has held that juvenile offenders are less culpable than adult offenders, and therefore, they are less deserving of the most severe punishments. *Graham v Florida*, 560 US 48, 68; 130 S Ct 2011; 176 L Ed 2d 825 (2010), and *Roper v Simmons*, 543 US 551, 569; 125 S Ct 1183; 161 L Ed 2d 1 (2005). In *Miller*, 567 US at 489, the Supreme Court held that a mandatory sentence of life imprisonment without the possibility of parole for juvenile offenders under the age of 18 convicted of murder constitutes cruel and unusual punishment. In response to the *Miller* decision, our Legislature enacted MCL 769.25, which applies to the sentencing of criminal defendants convicted of first-degree murder who were less

than 18 years of age at the time the sentencing offense was committed. MCL 769.25(1). The statute requires the prosecutor to file a motion if the prosecutor seeks imposition of a sentence of life without the possibility of parole. MCL 769.25(3) – (6). If a motion is not filed, the trial court is required to impose a maximum sentence of no more than 60 years and a minimum sentence of "not less than 25 years or more than 40 years." MCL 769.25(4) and (9). In this case, the prosecutor did not request a life-without-parole sentence for Armour, who was 17 years old at the time of the offense, and the trial court imposed a term-of-years sentence as required by MCL 769.25(9).

Armour argues that the trial court erred by failing to consider the *Miller* factors when imposing his term-of-years sentence. The trial court was required to consider the *Miller* factors in the context of considering the attributes of defendant's youth when balancing the sentencing objectives of "(1) reformation of the offender, (2) protection of society, (3) punishment of the offender, and (4) deterrence of others from committing like offenses." *People v Wines*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 336550), lv pending; slip op at 4, quoting *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Under *Miller*, the sentencing court must consider:

> (1) "[defendant's] chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the family and home environment that surrounds him—and from which he cannot usually extricate himself—no matter how brutal or dysfunctional"; (3) "the circumstances of the homicide offense, including the extent of his participation in the conduct and the way familial and peer pressures may have affected him"; (4) whether "he might have been charged [with] and convicted of a lesser offense if not for incompetencies associated with youth—for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys"; and (5) "the possibility of rehabilitation . . . ." [*Skinner*, ___ Mich at ___; slip op at 18-19, quoting *Miller*, 567 US at 477-478.]

With respect to maturity, impetuosity, and ability to appreciate risks and consequences, the trial court found that Armour demonstrated a perverse maturity and responsibility by coordinating a plan with Stanton-Lipscomb and successfully carrying it out. The court compared Armour to other 17-year-olds who demonstrate maturity and responsibility by holding down jobs and attending college, and it found that Armour demonstrated similar goal-directed behavior. Armour's goal, however, was murder. Regarding the circumstances of the offense and Armour's participation, the court commented on the detailed plan to kill Lane, and noted that Armour played his role by concealing the license plate, fleeing from the scene, and hiding the car. The court found that Armour's potential for rehabilitation was poor considering his juvenile record and failure to benefit from rehabilitative efforts in the juvenile system.

Although the trial court did not expressly address the second factor, family and home environment, it addressed the fourth factor, which assesses whether Armour was disadvantaged by his youth and inexperience in his dealings with police officers, prosecuting attorneys, and his own lawyer. The court found that Armour presented as shrewd and remorseless in his jail telephone calls, in contrast to his psychological evaluations in which he presented as weak and

pathic. The court remarked that Armour was capable of misleading the evaluators to believe that he was not fully responsible for giving in to Stanton-Lipscomb's influence. The court found that Armour was capable of managing his defense. Finally, the court also addressed the factors of reformation of the offender, protection of society, punishment of the offender, and deterrence of others. *Wines*, ___ Mich App at ___; slip op at 4. The court gave more weight to protecting society from dangerous persons such as Armour than it gave to Armour's poor prospects for rehabilitation and reformation.

Accordingly, on this record, the court did not abuse its discretion by sentencing Armour to 40 to 60 years, the maximum term-of-years sentence permitted under MCL 769.25(9). Unlike the defendant in *Wines* who expressed remorse and attempted to make amends for his participation in the robbery and murder Armour did not cooperate with the police, accept responsibility, or acknowledge the wrongfulness of his conduct. See *id*. at 5. Further, unlike the court in *Wines*, the trial court did not merely focus on the seriousness of the murder; it focused on Armour's voluntary decisions and actions. See *id*. Armour was committed to the gang lifestyle. His participation in Lane's murder was consistent with his past actions, his associations with gang members, and his declarations on social media. Under these circumstances, Armour has failed to demonstrate that his term-of-years sentence is disproportionate to "the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 471.

Furthermore, the record does not support Armour's claim of ineffective assistance. Contrary to what Armour asserts, his lawyer submitted Armour's psychological evaluations to the trial court at sentencing, and he advocated for a 25-year minimum sentence, emphasizing that Armour grew up in dysfunctional home and under traumatizing circumstances that skewed his social and moral development. Armour does not cite any other evidence that he believes his lawyer should have presented on his behalf. Accordingly, Armour has not established that he was denied the effective assistance of counsel at sentencing.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Karen M. Fort Hood