*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ROBERT KENNETH-DANIEL LONG, also known as ROBERT DANIEL KENNETH LONG,

Defendant-Appellant.

UNPUBLISHED
January 23, 2020

No. 344655
Kent Circuit Court
LC No. 17-006462-FC

Before: O'BRIEN, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of armed robbery, MCL 750.529; conspiracy to commit armed robbery, MCL 750.529 and MCL 750.157a(a); kidnapping, MCL 750.349; and conspiracy to commit kidnapping, MCL 750.349 and MCL 750.157a(a). We affirm.

## I. FACTS

In late June 2017, Logan Love (the victim's son), Marquan Cummings, Qumari Timble, and defendant (the victim's nephew) kidnapped and robbed the victim. The victim testified that the four men attacked and punched him in his home, tied him to a chair, and took cash and items from his pockets. Defendant threatened the victim by putting a knife to his throat and told him to stop resisting. The victim testified that defendant gave the other three men orders and instructions and appeared to "[run] the show." Pursuant to defendant's instructions, the group of men drove the victim's Dodge Durango to the back door of the house, carried the victim to the vehicle, and laid the victim in the vehicle's back-cargo area. The victim was wrapped with tape and an extension cord at that time.

According to the victim, they drove for two to three hours until defendant decided to find a motel room. When they arrived at the motel, Love went inside to reserve a room. Defendant instructed the victim to get out of the vehicle and walk into the motel room, but the victim instead ran into the middle of the street, flagged down a car, and explained to the driver that he had been kidnapped. The victim called 911 from the driver's cellphone while the four men fled

-1-

in the victim's Dodge Durango. All four men were all eventually apprehended by the police. The jury found defendant guilty as described above, and he now appeals as of right.

## II. SUBSTITUTION OF COUNSEL

Defendant first argues that the trial court abused its discretion by denying his request for a substitution of counsel. We disagree.

This Court reviews for an abuse of discretion a trial court's decision whether to grant a request for a substitution of counsel. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012).

While the Sixth Amendment guarantees a defendant's right to counsel, *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004), it does not entitle a defendant "to have the attorney of his choice . . . simply by requesting that the attorney originally appointed be replaced," *People v Mack*, 190 Mich App 7, 14; 475 NW2d 830 (1991). A defendant is only entitled to a substitution of counsel "upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and citation omitted). Good cause may exist when "a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic," when there is a "destruction of communication and a breakdown in the attorney-client relationship," or when counsel shows a lack of diligence or interest. *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011) (citation omitted).

At the end of the third day of trial, defendant expressed concerns about his counsel in front of the jury, but the trial court recessed for the day without addressing defendant's concerns. At the start of the fourth day of trial, defense counsel explained that defendant "fired" her that morning and requested to withdraw because there had "been a breakdown in communication" and defendant believed that counsel was "lying to him" and "working with the prosecutor." The trial court allowed defendant to voice his concerns, and in a written statement read by defense counsel, defendant stated that the prosecutor "present[ed] only 25 percent of the [victim's] transcript" from the preliminary examination, alleged that if the whole transcript was entered into evidence it would "prove[] perjury was committed by the alleged victim," argued that not presenting the entire transcript "automatically" lowered the prosecution's burden of proof, and requested that defense counsel "be fired" and the trial be "adjourn[ed] for two months." Defense counsel surmised, "I think the main problem is that [defendant] would like the preliminary transcripts admitted into evidence," but explained, "I can't in good conscience pursue that line, because I feel it would be malpractice to do so. I think it would be very damaging to his case."

The trial court ultimately denied defendant's request for a substitution of counsel after concluding that defendant did not demonstrate good cause to justify the substitution. The trial court reasoned that defendant's request for a substitution of counsel was not based on good cause, but rather a misunderstanding of the law. The trial court explained to defendant that a

prior inconsistent statement in the victim's preliminary examination went to the victim's credibility, and was not perjury. The trial court also reasoned that defense counsel was adequately presenting a defense and cross-examining witnesses consistent with a defense strategy; the trial court pointed out that, during the victim's testimony, "there were questions asked about whether statements made previously were consistent with his testimony in court." While defendant may have preferred that defense counsel present the entire preliminary examination transcript, defense counsel's decision not to do so because she believed it would be damaging to defendant's defense did not warrant her substitution. See *Strickland*, 293 Mich App at 398 (explaining that disagreements over defense strategy, including what evidence to present and what arguments to make, do not warrant substitution of counsel). Moreover, there was nothing to support defendant's allegation that defense counsel "colluded" with the prosecutor. In short, the trial court appropriately reasoned that defendant's argument for substitution was based on a general unhappiness with counsel's representation, which is not sufficient to establish good cause. *Id*.

The trial court also did not abuse its discretion by denying defendant's request for a substitution of counsel because such a substitution would have unreasonably disrupted the judicial process. *McFall*, 309 Mich App at 383. The trial court explained that the case was previously adjourned and that it would be difficult to adjourn again because the jury was empaneled and it was the fourth day of trial. The trial court also pointed out that (1) it was impractical to sequester the jury for two months while defendant's substitute counsel prepared for the case, (2) if the jurors were released, it was unlikely that they would all be able to return in two months, and (3) even if the jurors were able to return, it was unlikely that they would be able to remember all of the evidence that had been presented up to that point in the trial. This Court has found that a substitution of counsel would disrupt the judicial process in less egregious scenarios. See *Strickland*, 293 Mich App at 399 (concluding that substitution of counsel would have unreasonably delayed the judicial process where the defendant waited until the day of trial to request new counsel, the jury and witnesses were present, and the prosecutor and defense counsel were ready to proceed). We therefore agree with the trial court's conclusion that a substitution of counsel at such a late stage would unreasonably disrupt the judicial process.

In sum, the trial court inquired about the circumstances regarding substitution of counsel and properly determined that defendant did not demonstrate good cause for a substitution and that a substitution would unreasonably disrupt the judicial process. Therefore, the trial court did not abuse its discretion by denying defendant's request. See *McFall*, 309 Mich App at 383.

## III. AUTHENTICATION OF CELLPHONE RECORDS

Defendant next argues that the trial court erred by admitting a cellphone and the text messages contained on the cellphone because they were not properly authenticated, and that defense counsel was ineffective for failing to object to the admission of the evidence. We disagree.

Under MRE 901(a), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." When the prosecution moved to have the cellphone records entered into evidence, the trial court asked defense counsel whether she had any

objection to the admission of the cellphone and the extraction report, to which defense counsel stated, "No, your Honor." Because defense counsel affirmatively stated that defendant was not objecting to the admission of the cellphone records, we hold that defendant waived his authentication challenge on appeal. See *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011). If we were to allow such a challenge to stand, we would be permitting defendant to harbor error as an appellate parachute, which we cannot do. See *People v Carter*, 462 Mich 206, 214; 612 NW2d 144 (2000).[1]

We now turn to defendant's contention that defense counsel was ineffective for not raising the issue of authentication of the cellphone records at trial. Generally, "[t]he question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). Defendant filed a motion in this Court seeking remand for an evidentiary hearing regarding ineffective assistance of counsel, which this Court denied without prejudice. After plenary review of this matter and of the entire record, we are unable to find any basis for reconsidering that denial. Because no evidentiary hearing has been held, review is limited to mistakes apparent on the lower court record. See *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009).

To demonstrate ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. "Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004).

We first note that defendant does not argue that the cellphone records entered into evidence were not extracted from his cellphone. That is, defendant is not arguing that the evidence would not have been admitted if defense counsel argued that the records needed to be authenticated, but is instead arguing that defense counsel should have done more to have the records authenticated to prove that the cellphone belonged to defendant. Yet this was unnecessary because there was an abundance of evidence supporting that the cellphone belonged to defendant.

MRE 901(b)(4) provides that an item is sufficiently authenticated through "Distinctive Characteristics and the Like," which includes "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Evidence at trial established that when the police apprehended defendant, he was fleeing in the victim's Dodge Durango. When he was arrested, he did not have a cellphone on him, but a cellphone was found in the Dodge Durango. Other evidence established that this cellphone could not have been the victim's cellphone because that phone was thrown out of the vehicle earlier, nor could it have been the passenger's (Love's) cellphone because Love's cellphone was found on his person. A

---

[1] At any rate, the evidence was sufficiently authenticated, as will be explained.

Grand Rapids police detective conducted an extraction of the data on the cellphone, and it contained text messages sent to and received from Love, as demonstrated by Love's contact information listed as "Malek Cuz." Love is defendant's cousin, and his birth name is Malek. The text messages referred to shared family members; for example, in one text message, the sender (allegedly defendant) requested Love to ask "uncle bobby" something, presumably referring to the victim. The familial connections in the text messages sent to and received from Love, in conjunction with the circumstantial evidence of how the cellphone was found, were sufficiently distinctive to authenticate the cellphone as belonging to defendant. Thus, it was not objectively unreasonable for defense counsel to not argue that the cellphone records needed to be further authenticated before they could be admitted.

Moreover, defense counsel's decision not to argue for additional authentication of the cellphone and the records extracted therefrom was likely trial strategy. During closing arguments, defense counsel addressed the text messages and emphasized that it was "a phone" but not necessarily defendant's phone, that "[i]t came from the vehicle, not from [defendant's] possession," and that "[a]nybody could have been using" and "texting people from" the phone. By not urging further authentication of the cellphone records, defense counsel was able to argue that the cellphone did not in fact belong to defendant. This argument became weaker the more evidence the prosecution presented proving that the cellphone did, in fact, belong to defendant. Thus, defense counsel's decision to not argue for further authentication of the cellphone records was sound trial strategy, which we will not second-guess on appeal. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002) ("[T]his Court will not substitute its judgment for that of counsel regarding matters of trial strategy."). Defendant's ineffective assistance claim does not warrant appellate relief. *Trakhtenberg*, 493 Mich at 51

## IV. STANDARD 4

Defendant argues in his Standard 4 brief that he was deprived of his right to effective assistance of counsel because (1) defense counsel failed to explain to jurors during voir dire various reasons why a defendant may choose to exercise his or her Fifth Amendment right not to testify; (2) defense counsel failed to further inquire, challenge, or remove jurors during voir dire who indicated that it would be difficult to set aside race and ethnicity-based stereotypes; and (3) defense counsel was biased against defendant and she admitted as much to the jury. We disagree.

"[A]n attorney's decisions relating to the selection of jurors generally involve matters of trial strategy." *People v Johnson*, 245 Mich App 243, 259; 631 NW2d 1 (2001). "Jurors are presumed to follow their instructions, and it is presumed that instructions cure most errors." *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011).

When claiming ineffective assistance due to defense counsel's conflict of interest, a defendant must show that an actual conflict of interest adversely affected his lawyer's performance. *Cuyler v Sullivan*, 446 US 335, 350; 100 S Ct 1708; 64 L Ed 2d 333 (1980); *People v Smith*, 456 Mich 543, 556; 581 NW2d 654 (1998). Defense counsel's bias against his or her own client can amount to ineffective assistance if counsel acts on the bias to the defendant's detriment. See *People v Gioglio (On Remand)*, 296 Mich App 12, 25; 815 NW2d 589 (2012), vacated not in relevant part 493 Mich 864 (2012); see also *United States v Swanson*,

943 F2d 1070, 1074 (CA 9, 1991) (recognizing that an attorney "who adopts and acts upon a belief that his client should be convicted fails to function in any meaningful sense as the Government's adversary") (quotation marks, modifications, and citation omitted).

It is not apparent from the record that defense counsel's performance fell below an objective standard of reasonableness in any of the areas complained of by defendant. First addressing defense counsel's statements about defendant's right to testify, those statements, when read in context, were part of a broader conversation about how the rules are different in criminal trials. Defense counsel explained that the prosecution had the burden of proof and that defendant was not required to prove anything or provide any testimony whatsoever, including his own. This was a legitimate trial strategy that may not be second-guessed on appeal. See *Davis*, 250 Mich App at 368. Moreover, the jurors who indicated that they would prefer to hear defendant's side of the story were ultimately excused, so defendant cannot demonstrate that he was prejudiced by this line of questioning. Further, the trial court instructed the jury on the defendant's right not to testify, and "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Thus, any prejudice was cured by the trial court's instructions, and defendant is not entitled to relief on this basis.

As for defense counsel's discussion of stereotypes (including racial biases) during jury selection, the record supports that her statements were made as a part of a larger discussion of the importance of leaving the jurors' personal biases out of their decision. Defense counsel's questions on this topic aimed to determine whether any of the jurors had biases that they could not put aside to form an impartial verdict. Defendant cannot show that defense counsel's decision to discuss with the prospective jurors the dangers of biases caused her performance to fall below an objective standard of reasonableness. This was a valid trial strategy aimed at empaneling a fair and impartial jury.

Defendant complains in particular that, when jurors were asked whether they "would struggle to set . . . aside" biases they had, Juror 11 responded, "A little bit." Defense counsel then emphasized the importance of putting aside those biases, explaining that the first step to putting them aside was recognizing that they exist. She then asked again, "So does anyone think—and just honestly, we're not going to judge you. We just need to know. Does anyone think, you know what, I don't think I can set aside biases or stereotypes that I have against [defendant]?" None of the jurors indicated that they could not set aside their biases. Thus, defense counsel ensured during voir dire that every juror would be able to set aside their biases. Contrary to defendant's assertions, defense counsel did not fail to inquire, challenge, or remove jurors who expressed that they would not be able to put aside their biases. And to the extent that one juror said that he would struggle "[a] little bit" to put aside his biases, we conclude that it was not objectively unreasonable for defense counsel to not remove that juror after the juror indicated that he could ultimately set his biases aside.

Finally, it is apparent from the record that defense counsel's statements about her own biases, including her statements about how 99% of her clients plead guilty and she goes about her life assuming that 99% of the people she encounters are criminals, was a part of the larger discussion of stereotypes and the necessity of setting aside personal biases when acting as a juror. The record does not reflect that defense counsel ever stated that her client was a criminal

or otherwise implied that he was guilty. There is simply nothing to show that defense counsel had a conflict of interest of any kind in this case, and defendant does not point to anything to support that she was biased or that the biases she discussed during jury selection had any impact on her ability to represent defendant at trial. The trial court also instructed the jury that "[a] person accused of a crime is presumed to be innocent," and explained that the jury "must start with the presumption that the defendant is innocent. This presumption continues throughout the trial and entitles the defendant to a verdict of not guilty unless you are satisfied beyond a reasonable doubt that he is guilty." Again, jurors are presumed to follow their instructions, and instructions are presumed to cure most errors. See *Abraham*, 256 Mich App at 279. Accordingly, defendant did not demonstrate that he suffered any prejudice as a result of his counsel's performance.

In sum, defense counsel's decisions during jury selection and voir dire were clearly trial strategies. Defendant failed to show that defense counsel's performance fell below an objective standard of reasonableness and that a different result was reasonably probable. He is therefore not entitled to relief. *Trakhtenberg*, 493 Mich at 51.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola

-7-