*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JOSEPH BERNARD DZIUBA,

        Defendant-Appellant.

UNPUBLISHED
January 27, 2022

No. 353828
Alpena Circuit Court
LC No. 19-009095-FH

Before: CAMERON, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his bench-trial conviction of resisting or obstructing a police officer, MCL 750.81d(1).[1] We affirm.

## I. BACKGROUND

In June 2019, Michigan State Police Troopers Kevin Pagels and Luke Simmons went to defendant's home to apprehend defendant's son, JD, on eight outstanding misdemeanor warrants. JD did not live at his father's home, but Pagels had been advised by another officer that JD was in defendant's backyard. When the officers arrived and saw JD in the backyard, he fled into defendant's home through the back door. Pagels made loud demands for JD to surrender himself, and after learning that defendant was in the home, told him to come out as well. After that was unsuccessful, Pagles called extra troopers to secure the perimeter of the home while he obtained a search warrant to enter defendant's home to arrest JD. After obtaining the warrant, the officers knocked and announced their presence at the front door but did not receive a response and were unable to breach the front door despite repeated efforts. The officers then knocked and announced their presence at the back door but did not receive a response, so they breached the back door.

Trooper Jordan Romel and his canine entered the residence first. Romel testified that he ordered that anyone in the house show their presence. JD's girlfriend, KW, immediately

---

[1] Defendant was sentenced to 10 months in jail.

-1-

surrendered herself. At some point, defendant emerged from his bedroom. Pagels testified that defendant was hostile and refused to cooperate. Romel told defendant to show his hands and to come forward and get on his knees. Defendant showed his hands but did not come forward and get on his knees. Romel told defendant approximately five times that he would release the canine to bite defendant if defendant did not comply. When defendant began to walk toward a closed door to his right, Trooper Romel released the canine and it bit defendant, who was then arrested. JD was found in defendant's attic and also arrested.

Defendant testified at trial that the walls of his bedroom were soundproof and that at the time the police were attempting to gain access to his home, he was asleep in his bedroom with his three-year-old daughter. The trial court found defendant guilty of resisting and obstructing, but acquitted him of harboring a misdemeanant, MCL 750.199(2).

## II. WAIVER OF JURY TRIAL

Defendant first argues that he is entitled to a new trial on the basis that his waiver of a jury trial was invalid. Alternatively, defendant argues that the trial court abused its discretion by denying his motion to withdraw his waiver. We disagree.[2]

"A criminal defendant has a constitutionally guaranteed right to a jury determination that he is guilty beyond a reasonable doubt." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). A defendant may waive the right to a jury trial with the consent of the prosecutor and approval of the trial court. *Id*. For a jury trial waiver to be valid, it must be both knowingly and voluntarily made. *Id*. MCR 6.402(B) provides the procedural requirements to waive a jury trial:

> Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

Compliance with this court rule creates a presumption that the waiver was knowing, voluntary, and intelligent. *People v Mosly*, 259 Mich App 90, 96; 672 NW2d 897 (2003).

---

[2] "The adequacy of a jury trial waiver is a mixed question of fact and law." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). Constitutional issues are reviewed de novo. *People v Brown*, 330 Mich App 223, 229; 946 NW2d 852 (2019). "A trial court's factual findings are clearly erroneous when this Court is left with a definite and firm conviction that the trial court made a mistake." *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). A trial court's ruling on a motion to withdraw a jury waiver is reviewed for an abuse of discretion. See *People v Wagner*, 114 Mich App 541, 558-559; 320 NW2d 251 (1982). An abuse of discretion exists if a trial court's decision falls outside the range of principled outcomes. *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010).

In this case, the following exchange occurred at a status conference in September 2019:

> *Defense Counsel*. Judge, we would ask that this matter be set for trial and I've discussed the matter with my client. It would be our intention to waive the jury [trial] and have it set for a bench trial.

> \* \* \*

> *The Prosecutor*. No objection, your Honor.[3]

> \* \* \*

> *Defense Counsel*. [Defendant], do you understand that you have a right to a trial by a jury of 12 people . . . to find facts in support of a conviction of [sic] acquittal; do you understand that?

> *Defendant*. Yes, your Honor.

> *The Court*. Your attorney advises that you're waiving that right. Do you waive that right?

> *Defendant*. Yes, your Honor.

Defendant argues that the trial court failed to comply with MCR 6.402(B) because defense counsel, not the court, advised defendant of his right to a jury trial and addressed defendant personally to ascertain whether he understood this right. Defendant also argues that MCR 6.402(B) was violated because neither the trial court nor his counsel made an inquiry into the voluntariness of the waiver. We agree that the trial court failed to comply with MCR 6.402(B), but conclude that reversal is not required.

A trial court's failure to comply with MCR 6.402(B) is a nonstructural error and can be considered harmless if " 'the record establishes that [the] defendant nonetheless understood that he had a right to a trial by jury and voluntarily chose to waive that right.' " *Cook*, 285 Mich App at 425, quoting *Mosley*, 259 Mich App at 96 (alteration by *Cook*). In contrast, a constitutionally invalid waiver of a jury trial, i.e., one that is not voluntary, knowing, and intelligent, is a structural error that requires reversal. See *id*. at 427.

In this case, the record demonstrates that defendant understood he had a right to a jury trial and voluntarily chose to waive that right so that he could be tried by the court. In addition to his trial counsel explaining that right at the September 2019 status conference, on October 21, 2019, defendant signed a written waiver statement in which he acknowledged that he had a constitutional

---

[3] Because the prosecutor stated that he had no objection to a bench trial, we disagree with defendant's argument that the prosecutor did not consent to defendant's waiver or jury trial.

right to a jury trial and was voluntarily waiving it.[4]  See MCL 763.3.  Viewing the status conference and the written waiver together, we conclude that defendant knowingly and voluntarily waived his right to a jury trial.  Therefore, although the trial court failed to comply with MCR 6.402(B), defendant is not entitled to a new trial on the basis that his waiver was invalid.

Defendant also argues that the trial court abused its discretion by denying his motion to withdraw his waiver.

"A defendant has no right to withdraw a waiver of jury trial once it is validly made . . . ." *Cook*, 285 Mich App at 423.  But a trial court may permit a defendant to withdraw a waiver for good cause shown.  See *People v Wagner*, 114 Mich App 541, 558-559; 320 NW2d 251 (1982).  In a different context, the Supreme Court has determined that "good cause" means a satisfactory, sound, or valid reason.  *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012).

Defendant's motion to withdraw the waiver was based on a judicial reassignment.  The judge who was initially assigned to the case and had granted the waiver retired and a successor judged was assigned to the case.  Defendant relies on the American Bar Association's Criminal Justice Standards that a change in trial judge allows a defendant to withdraw a jury waiver as a matter of right.  ABA's Criminal Justice Standards, Trial by Jury 15-1.2(d).  We decline to hold that a change in judge is a basis to require a judge to allow a defendant to withdraw a jury waiver.  Although a trial court has discretion to grant a motion to withdraw on that basis, it is not required to do so.  And in the absence of additional considerations, we conclude that the trial court's decision to deny defendant's motion to withdraw based on judicial reassignment was not outside the range of principled outcomes.  See *Wagner*, 114 Mich App at 559 (holding that the trial court did not abuse its discretion by denying a motion to withdraw a jury waiver when the record demonstrated the motion "was made as part of a general attempt to delay trial so that the case could be heard before [a different judge].").

## III.  MOTIONS FOR SUBSTITUTE COUNSEL AND ADJOURNMENT

Defendant also argues that the trial court abuse its discretion by not appointing substitute counsel or by denying his motion to adjourn.  We again disagree.[5]

"An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally

---

[4] As the prosecutor argues, it appears that the waiver was signed in connection with a hearing held on October 21, 2019.  However, a transcript of that hearing is not available and so we are unable to determine whether the trial court complied with MCR 6.402(B) on that date.

[5] "A trial court's decision regarding substitution of counsel will not be disturbed absent an abuse of discretion."  *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001).  A trial court's ruling on a defendant's request for an adjournment or continuance is also reviewed for an abuse of discretion.  *People v Coy*, 258 Mich App 1, 17; 669 NW2d 831 (2003).  An abuse of discretion exists if a trial court's decision falls outside the range of principled outcomes.  *Feezel*, 486 Mich at 192.

appointed be replaced." *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015) (quotation marks and citations omitted). "Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process." *Id*. at 382-383 (quotation marks and citations omitted). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *Id*. at 383 (quotation marks and citations omitted). "[A] defendant's general unhappiness with counsel's representation is insufficient." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011). "A defendant may not purposely break down the attorney-client relationship by refusing to cooperate with his assigned attorney and then argue that there is good cause for a substitution of counsel." *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001) (quotation marks and citation omitted).

Defendant does not argue that he and his trial counsel had a legitimate difference of opinion regarding trial tactics or that his counsel was disinterested. Rather, defendant argues that trial counsel should have filed his motion to suppress based on an illegal search and that there was a breakdown in the attorney-client relationship. Neither argument supports the conclusion that the trial court abused its discretion by declining to appoint substitute counsel.

Defendant's request for substitute counsel was made at the February 27, 2020 status conference. Defendant made two assertions in support of this request: (1) trial counsel had spoke with him for only five minutes; and (2) trial counsel had not filed a motion for illegal search and seizure as defendant requested.[6] In response, trial counsel denied that he had met with defendant for only five minutes. Counsel stated that he had met with defendant multiple times and indicated that one meeting went "well beyond an hour." Counsel also stated that he was aware of defendant's desire for a motion to suppress, but counsel did not believe the motion had merit. The trial court denied defendant's request for substitute counsel, concluding that there was no legal basis to file a "motion to suppress illegal search and seizure," and that defendant's allegation that he spent only five minutes with trial counsel was "way out of line." Defendant replied that he spoke with counsel "five to ten minutes at the most"; the court told defendant that it found counsel's version of the events more credible.

As will be discussed in more detail, defendant has not shown that a motion to suppress would have been relevant to the charge of resisting and obstructing, and his trial counsel was not required to file frivolous motion. See *Traylor*, 245 Mich App at 463. Therefore, the trial court did not abuse its discretion by declining to appoint substitute counsel on the basis that trial counsel did not file a motion to suppress.

Next, the trial court did not clearly err by finding trial counsel's version of the events more credible considering that there were multiple court hearings where both counsel and defendant were present prior to the February 27 status conference. Further, disagreement between defendant and trial counsel regarding counsel's level of involvement in the case does not establish that there

---

[6] Defendant also reiterated his request to have a jury trial, but the trial court explained that the motion to withdraw the waiver of that right had already been denied.

was "a destruction of communication and a breakdown in the attorney-client relationship . . . ." *McFall*, 309 Mich App at 383 (quotation marks and citations omitted). Overall, defendant's general unhappiness with his counsel's representation was insufficient to establish good cause to appoint substitute counsel. See *Strickland*, 293 Mich App at 398.[7]

Even if there was good cause to appoint substitute counsel, it must also be considered whether substitution would have unreasonably disrupted the judicial process. *McFall*, 309 Mich App at 382-383. Defendant was arraigned on August 5, 2019. Apart from the preliminary examination, trial counsel represented defendant at all of the proceedings. Yet defendant did not request substitute counsel until the last status conference, which took place on February 27, 2020, less than one week before the scheduled bench trial. As the trial court stated, defendant was requesting substitute counsel "at the 11th hour." Thus, the timing of defendant's request supports the trial court's decision to deny substitute counsel. For these reasons, defendant has not established that this decision amounted to an abuse of discretion.

Defendant also challenges the trial court's decision to deny his motion for adjournment.

Generally, a request for an adjournment must be based on good cause. MCR 2.503(B)(1). To determine whether good cause exists, this Court considers whether the defendant asserted a constitutional right, had a legitimate reason for asserting the right, and had been negligent in asserting the right. *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003). This Court also considers whether the defendant was merely attempting to delay the trial. *People v Echavarria*, 233 Mich App 356, 369; 592 NW2d 737 (1999).

At the beginning of the bench trial on March 4, 2020, defendant informed the trial court that he had a new lawyer, "Mr. Funk." Upon further questioning, however, it was established that defendant had not retained Funk and had an appointment to meet with him the next day. Funk had not filed an appearance, and after taking a break so that defendant could call Funk, defendant stated that Funk was unable to come to court because he was "not dressed right now." The trial court

---

[7] Defendant also argues that the trial court should have granted his motion for recusal. However, defendant has not shown that the trial court abused its discretion by denying the motion. See *People v Upshaw*, 172 Mich App 386, 389; 431 NW2d 520 (1988). Defendant argues that the trial judge should have recused himself because his findings that defendant was in contempt and that trial counsel's version of the events was more credible raised concerns of partiality. First, the judge later dismissed the sanctions for contempt. Second, the judge had to resolve the conflicting statements as to how long the defendant and his counsel had met to rule on defendant's request for substitute counsel, and the mere fact that he found counsel's version of events more credible does not raise legitimate concerns of partiality. See *People v Wells*, 238 Mich App 383, 391; 605 NW2d 374 (1999) ("Where a judge forms opinions during the course of the trial process on the basis of facts introduced or events that occur during the proceedings, such opinions do not constitute bias or partiality unless there is a deep-seated favoritism or antagonism such that the exercise of fair judgment is impossible."). Indeed, the acquittal of the harboring a misdemeanant charge shows that the judge was capable of exercising fair judgment.

then denied defendant's request for adjournment, noting that it had a "strong impression that you're doing everything you can do just to try and sabotage the trial moving forward[.]"

The record demonstrates that defendant was negligent in asserting his right to counsel by not scheduling an appointment to meet with Funk until after the day the trial was scheduled to begin. *Coy*, 258 Mich App at 18. The same facts also support the trial court's finding that defendant was merely attempting to delay the trial. *Echavarria*, 233 Mich App at 369. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for adjournment.

## IV. SUFFICIENCY OF THE EVIDENCE AND GREAT WEIGHT

Next, defendant argues that there was insufficient evidence to support his conviction. In the alternative, defendant argues that his conviction was against the great weight of the evidence. We disagree on both counts.[8]

"The elements of resisting or obstructing a police officer under MCL 750.81d(1) are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, 305 Mich App 484, 491; 853 NW2d 383 (2014) (quotation marks and citation omitted). "Obstruct" means "the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a). Further, "the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d." *Quinn*, 305 Mich App at 492. In other words, resisting an unlawful arrest is not a crime. See *People v Moreno*, 491 Mich 38, 57-58; 814 NW2d 624 (2012) (explaining that there is a common-law right to resist unlawful arrest).

Defendant does not contest that he failed to comply with the officers' commands. Rather, he argues that the police were not acting lawfully at the time of arrest because the search warrant

---

[8] We review a challenge to the sufficiency of the evidence de novo. *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "In evaluating defendant's claim regarding the sufficiency of the evidence, this Court reviews the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020) (quotation marks and citation omitted). "Direct and circumstantial evidence, including reasonable inferences arising from the use of circumstantial evidence, may provide sufficient proof to meet the elements of a crime." *Bailey*, 330 Mich App at 46. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted).

that authorized them to enter the home was, allegedly, invalid.[9] However, defendant cites no caselaw in support of the position that officers are not acting lawfully when executing a search warrant that is later deemed invalid, nor does he explain why we should adopt it. While we are not aware of Michigan caselaw addressing this issue, the Third Circuit Court of Appeals has held "that a person does not have a right to forcibly resist the execution of a search warrant by a peace officer or government agent, even though that warrant may subsequently be held to be invalid." *United Stats v Ferrone*, 438 F2d 381, 390 (CA 3, 1971). The court offered the following rationale for that holding:

> Society has an interest in securing for its members the right to be free from unreasonable searches and seizures. Society also has an interest, however, in the orderly settlement of disputes between citizens and their government; it has an especially strong interest in minimizing the use of violent self-help in the resolution of those disputes. We think a proper accommodation of those interests requires that a person claiming to be aggrieved by a search conducted by a peace officer pursuant to an allegedly invalid warrant test that claim in a court of law and not forcibly resist the execution of the warrant at the place of search. The development of legal safeguards in the Fourth, Fifth, Sixth and Fourteenth Amendment fields in recent years has provided the victim of an unlawful search with realistic and orderly legal alternatives to physical resistance. [*Id*.]

We find this reasoning persuasive[10] as it is consistent with the good-faith exception to the exclusionary rule, which "renders evidence seized pursuant to an invalid search warrant admissible as substantive evidence in criminal proceedings where the police acted in reasonable reliance on a presumptively valid search warrant that was later declared invalid." *People v Hellstrom*, 264 Mich App 187, 193; 690 NW2d 293 (2004). As the United States Supreme Court explained:

> It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. [*United States v Leon*, 468 US 897, 905; 104 S Ct 3405; 82 L Ed 2d 677 (1984).]

---

[9] Defendant argues that the warrant was invalid partly because the assertion in the search warrant affidavit that JD was in defendant's home was derived from on an ongoing illegal search of the curtilage of defendant's home. Defendant also argues that the affidavit provided no information for the magistrate to determine whether JD's eight misdemeanor warrants were valid.

[10] Decisions of lower federal courts are not binding on this Court, but they may be considered as persuasive authority. *People v Walker (On Remand)*, 328 Mich App 429, 444-445; 938 NW2d 31 (2019).

This rationale applies with equal force to the question before us. An officer acting in reasonable reliance on a warrant should not be deemed to be have been acting unlawfully in the event that the warrant is later declared invalid.

Our conclusion might be different if it could be shown that the police did not reasonably believe the search warrant was valid. But there is no indication that the supporting affidavit contained false information or that the issuing magistrate wholly abandoned his or her judicial role. See *People v Czuprynski*, 325 Mich App 449, 469; 926 NW2d 282 (2018). Nor is there an indication that the affidavit was so lacking in indicia of probable cause that the officer's belief in its existence was entirely unreasonable. See *id*. Defendant argues that the search warrant was facially deficient because it failed to state specific facts to support the conclusion that there was probable cause to arrest JD for having eight misdemeanor warrants. However, the search warrant affidavit did not merely allege that the officer was made aware of eight misdemeanor warrants for JD. Rather, the affidavit also stated that the officer "contacted Alpena County Central Dispatch who confirmed the warrants to be valid." Therefore, the affidavit for the search warrant did not contain "mere conclusions or beliefs." *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006). Finally, the search warrant was not facially deficient because it specified the particular place to be searched and what was to be seized, i.e., officers could search defendant's home to seize JD. See *Hellstrom*, 264 Mich App at 197.

Further, the evidence shows that the police lawfully executed the search warrant. The police complied with the knock-and-announce statute because they made multiple announcements at the front and back door before forcing their way in. See MCL 780.656; *People v Fetterley*, 229 Mich App 511, 521; 583 NW2d 199 (1998). Next, the police lawfully ordered defendant to submit to detainment so they could execute the search warrant. A search warrant "implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted." *Michigan v Summers*, 452 US 692, 705; 101 S Ct 2587; 69 L Ed 2d 340 (1981). See also *Muehler v Mena*, 544 US 93, 98; 125 S Ct 1465; 161 L Ed 2d 299 (2005). In this case, the search warrant authorized the officers to search for and seize JD. Therefore, the officers had the authority to detain defendant during the execution of the search warrant, and Romel had the authority to order defendant to show his hands and to come forward and get on his knees. For these reasons, there was sufficient evidence for the trial court to find that the police were acting lawfully.

Defendant also argues that because he was trying to ascertain whether Romel's commands were lawful, he did not *knowingly* fail to comply with a lawful command. Again, defendant's argument is based on an unstated premise that to be guilty of resisting or obstructing, he must have known that the command was lawful. Defendant cites no caselaw interpreting the statute in this manner, nor does he make arguments in support of this interpretation. Regardless, as concluded above, Romel's command for defendant to submit to detainment was lawful. Further, because Romel announced multiple times that he was executing a search warrant, it is reasonable to infer that defendant heard these announcements and knew Romel's command was lawful.

In sum, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support defendant's conviction. We also conclude that defendant's conviction was not against the great weight of the evidence.

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his trial counsel provided ineffective assistance by failing to file a motion to suppress and by failing to elicit testimony that the officers told defendant he was under arrest before he obstructed a police officer. We disagree.[11]

"To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

First, it was objectively reasonable for trial counsel to not file a motion to suppress on the basis that the officers conducted an unlawful search of the curtilage of defendant's home. For the reasons discussed, the validity of the search warrant was irrelevant so long as the officer had a reasonable belief that the warrant was valid and the magistrate had not abandoned his or her judicial role. Trial counsel was not required to file a futile motion, and defendant cannot establish that there is a reasonable probability that the outcome would have been different had the motion been filed.

Second, trial counsel did not provide ineffective assistance by not eliciting testimony that the police told defendant he was under arrest before the obstruction. The incident reports from Pagels and Romel, along with Pagels's testimony at the preliminary examination, support defendant's assertion that he was told he was under arrest before the police entered his home and when they initially entered defendant's home after obtaining the search warrant. Defendant argues that his counsel should have elicited this testimony and used it to argue that the police were not acting lawfully because they could not have legally arrested him before his obstruction.

The prosecution responds that before defendant obstructed the police, the police had probable cause to arrest defendant for harboring a misdemeanant. MCL 750.199(2) provides in relevant part:

> A person who knowingly or willfully conceals or harbors for the purpose of concealment from a peace officer a person who is the subject of 1 or more of the following is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both:

> (a) An arrest warrant for a misdemeanor.

---

[11] Claims of ineffective assistance of counsel present a mixed question of fact and constitutional law. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *Id*. "Because the trial court did not hold an evidentiary hearing on defendant's claim that he did not receive the effective assistance of counsel, there are no factual findings to which this Court must defer, and this Court's review is for mistakes that are apparent on the record alone." *People v McFarlane*, 325 Mich App 507, 527; 926 NW2d 339 (2018).

The trial court acquitted defendant of this charge because it found that because JD's girlfriend was also in the home, it could not find beyond a reasonable doubt whether it was defendant or the girlfriend who helped JD hide in the attic. However, the probable cause standard "is less rigorous than the requirement to find guilt beyond a reasonable doubt to convict a criminal defendant, and the gap between probable cause and guilt beyond a reasonable doubt is broad." *People v Plunkett*, 485 Mich 50, 57; 780 NW2d 280 (2010). At the preliminary examination, the district court found that there was probable cause for charging defendant with harboring a misdemeanant. Further, as discussed, the officers had authority to detain defendant in connection with execution of the search warrant and they only arrested him after he failed to comply with their lawful commands. This alone is a sufficient basis to uphold defendant's conviction. For these reasons, there is no basis to conclude that a reasonable probability of a different outcome exists had trial court counsel questioned the officers about why they believed they could arrest defendant before entering his home.

Affirmed.

/s/ Thomas C. Cameron
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro